# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**NOAH L. GAMBILL**
Wagner, Crawford, and Gambill
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
Deputy Attorney General

**DAVID E. COREY**
Deputy Attorney General
Indianapolis, Indiana



FILED

Feb 27 2014, 9:41 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: | ) ) ) | |
| J.G. AND C.G. (MINOR CHILDREN) | ) | |
| AND | ) ) | |
| B.G. (MOTHER), | ) ) | |
| | ) | No. 84A05-1305-JT-219 |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
| Appellee-Petitioner. | ) ) | |

APPEAL FROM THE VIGO CIRCUIT COURT
The Honorable Daniel W. Kelly, Magistrate
The Honorable David R. Bolk, Judge
Cause No. 84C01-1110-JT-1249
84C01-1110-JT-1250

**February 27, 2014**

**MATHIAS, Judge**

B.J.G. ("Mother") appeals the Vigo Circuit Court's order terminating her parental rights to J.G. and C.G., two of her seven children. Concluding that Mother has forfeited her right to appeal because she failed to file a timely Notice of Appeal, we dismiss her appeal.

## Facts and Procedural History

Mother has a history of drug abuse, mental illness, domestic violence, and periods of incarceration. She does not have custody of any of the seven children she has given birth to. Her extensive history with the Department of Child Services ("DCS") dates back to 2001. While the instant termination proceedings were underway in 2011, the parental rights of both Mother and D.F. ("Father") were terminated as to two other children not the subject of this appeal. See D.F. v. Ind. Dep't of Child Servs., 959 N.E.2d 932 (Ind. Ct. App. Dec. 20, 2011) (memorandum decision).

During her incarceration while prior termination proceedings were underway in the D.F. case, on November 15, 2010, Mother gave birth to twins, J.G. and C.G. Mother was incarcerated at the time of the twins' births because she violated her probation on a conviction for possession of methamphetamine by testing positive for that illegal substance. She continued to test positive for methamphetamine while she was pregnant with the twins. Four days after the twins' births, on November 19, 2010, the DCS filed a Child in Need of Services ("CHINS") petition. After a fact finding hearing, the children were found to be CHINS and were formally removed from Mother's care.

Over the course of her history with DCS, Mother has been diagnosed with schizophrenia, paranoid type, schizoaffective disorder, bipolar type, and substance dependence. She has been hospitalized on numerous occasions as a result of her mental illnesses.

Father is not a party to this appeal, although his parental rights to J.G. and C.G. were also terminated. Father has been convicted of domestic battery against Mother on two separate occasions. Mother has also reportedly battered Father on numerous occasions. Mother's on-again, off-again relationship with Father spans several years, and they were still residing together in November 2012.

DCS made referrals to Mother for counseling, evaluations and parent aide services. Mother struggled to complete job applications and rejected her parent aide's suggestions concerning shelters or facilities where Mother could obtain housing. Mother also missed doctor's appointments scheduled to address her continuing mental health issues. Over an eight month period, from February 7 to October 28, 2011, Mother tested positive for illegal substances fourteen times, which included positive screens for marijuana, cocaine, amphetamine, and methamphetamine. She also missed twenty-eight drug screens.

On October 28, 2011, the DCS filed its petition to terminate Mother's parental rights to J.G. and C.G. During continuing visitations with J.G. and C.G., Mother was nervous, but she tried to interact with the children. Mother also cancelled twelve visitations with the children. Despite all of the services offered through DCS, Mother did not make any progress in her parenting skills, and caseworkers concluded that Mother and the children were not bonded.

Mother last visited the children on or about October 24, 2011. Thereafter, Mother's visits with the children ceased because she was arrested for criminal confinement. Specifically, Mother took a young child from the child's backyard because Mother believed that the child was one of her older children for whom her rights had been terminated. As a result, Mother was placed in an in-patient unit of a psychiatric facility for five months.

In 2012, Mother also began participating in the P.A.I.R. program, which is a mental health diversion program, and she graduated from that program in December 2012. But during the approximate twelve months she participated in the P.A.I.R. program, she tested positive for crack cocaine in March 2012, and she was also homeless for a period of time during the summer of 2012. Simultaneous with her participation in the P.A.I.R. program, Mother enrolled in Next Steps in April 2012, which is a sober living arrangement. But Mother left that program sometime in June 2012 and was using alcohol. Mother also participated in addictions treatment. Mother's addictions counselor observed that Mother had made progress in addressing her addiction issues, but also believed that Mother had not embraced the recovery community, and Mother's prognosis was still "poor and guarded." December 10, 2012 Tr. pp. 70, 72.

Mother failed to appear at the May 24, 2012 termination hearing, but was represented by counsel. Shortly thereafter, the trial court issued its order terminating Mother's parental rights. Mother timely appealed the termination order, but the appeal was dismissed because Mother failed to submit any other documents or pay the filing fee. However, on its own motion and after a hearing was held, on July 27, 2012, the trial court

4

set aside its first termination order because Mother believed that the May 24, 2012 termination hearing had been continued.

Therefore, evidentiary hearings were again held on December 10, 2012 and January 2, 2013. Mother's family case manager testified that termination of Mother's parental rights was in the children's best interests because Mother failed to complete services, especially those provided to address her substance abuse, Mother missed drug screens, has a history of domestic violence, and Mother had not substantially progressed in her ability to parent despite three years of services. Tr. pp. 153-54. The court appointed special advocate ("CASA") acknowledged Mother's recent progress, but had concerns about Mother's ability to remain drug free. The CASA also recommended termination of Mother's parental rights given Mother's history of relapse. On March 25, 2013, the trial court issued an order terminating Mother's parental rights to J.G. and C.G.

Mother filed a Notice of Intent to Appeal on April 4, 2013. In that document, she requested the appointment of separate, outside counsel for appeal of the March 25, 2013 termination order. The trial court appointed appellate counsel on April 25, 2013, and Mother's Notice of Appeal was filed on May 3, 2013, well past the thirty-day time limit for filing appeals of final judgments.

## I. Timely Appeal

We first address whether Mother's appeal is timely. A party initiates an appeal by filing a Notice of Appeal with the trial court clerk within thirty days after entry of a final judgment. Ind. Appellate Rule 9(A)(1). Appellate Rule 9 requires the following information to be included in the Notice of Appeal: a designation of the appealed

5

judgment or order; a designation of the court to which the appeal is taken; direction for the trial court clerk to assemble the Clerk's Record; and a designation of the portions of the Transcript that should be prepared. App. R. 9(F); see also Form App. R. 9–1.

> In Indiana, timeliness of filing a notice of appeal is of the utmost importance. This is especially true in time-sensitive cases involving child support and other child-related issues. "The timely filing of a notice of appeal is a jurisdictional prerequisite, and failure to conform to the applicable time limits results in forfeiture of an appeal."

Bohlander v. Bohlander, 875 N.E.2d 299, 301 (Ind. Ct. App. 2007), trans. denied (citation omitted).

Here, Mother filed her Notice of Appeal well beyond the thirty-day time limit established in Appellate Rule 9. However, she did file a Notice of Intent to File an Appeal before the thirty-day time limit had expired. Therefore, Mother argues that we should ignore the thirty-day time limit in Appellate Rule 9(A) because appellate counsel was not appointed until after the thirty-day time limit had expired. In response, the State argues that Mother forfeited her appeal by failing to file a timely Notice of Appeal, citing In re the Involuntary Termination of the Parent-Child Relationship of D.L., 952 N.E.2d 209 (Ind. Ct. App. 2011), trans. denied.

In Termination of D.L., the trial court issued a termination order on August 20, 2010, terminating the Parents' parental rights to their five youngest children, and a separate order on August 23, 2010, terminating Parents' parental rights to their oldest child. On August 30, 2010, Mother filed a "Notice of Intent to Appeal and Request for Appointment of Counsel" with the trial court, and the court appointed appellate counsel that same day. The next day, Father filed an identical Notice of Intent to Appeal, and the

6

same appellate counsel was appointed that day. On September 23, 2010, appellate counsel filed a Notice of Appeal with respect to all six cause numbers. The September 23, 2010 Notice of Appeal was filed three days late for the August 20 termination order and one day late for the August 23 termination order.

The Parents argued that their appeal of the termination orders was timely because their Notices of Intent to Appeal, filed within the Appellate Rule 9 thirty-day time limit, were the functional equivalent of the required Notice of Appeal. Mother's Notice of Intent to Appeal stated:

> COMES NOW, [Mother], by Counsel ... and advises the Court that she wishes to pursue an appeal of the termination of her parental rights, which occurred on August 20, 2010.
> As a result of her having Counsel appointed for her in the Termination Cause, she respectfully moves the Court to appoint Counsel to represent her in the appellate process.
> WHEREFORE, Counsel for [Mother] requests that Counsel be appointed for [Mother] for purposes of processing her appeal.

Id. at 212 (record citation omitted). Father's Notice of Intent to Appeal and Request for Appointment of Counsel was identical to Mother's in all relevant parts.

Our court made the following observations in response to Parents' arguments that this pleading was the functional equivalent of a Notice to Appeal:

> It is clear that the purpose of this pleading was to have counsel appointed who would then file a Notice of Appeal on behalf of Parents. Other than identifying one of the two termination orders issued by the trial court, no part of this pleading fulfills the requirements of a Notice of Appeal as described in Appellate Rule 9. Only one of the two final appealable orders issued by the trial court is identified; the court to which the order is to be appealed is not identified; the clerk of the court is not requested to assemble the Clerk's Record; and the court reporter is not requested to transcribe any or all of the hearings conducted in this case. Rule 9, especially when considered in conjunction with the form Notice of Appeal in the appendix

7

to the Rules, is clear regarding what must be included in a Notice of Appeal. None of those things are included in the Notices of Intent to Appeal filed by Parents.

*** 

[T]he Notices of Intent to Appeal filed by Parents in this case do not fulfill the purpose of the notice of appeal requirement—to serve as a mechanism to alert the trial court and the parties of the initiation of an appeal and to trigger action by the trial court clerk and court reporter, setting in motion the filing deadlines imposed by the Appellate Rules.

Id. at 212-13. Because the Parents failed to file their Notices of Appeal within thirty days of the final judgment(s), we concluded that the Parents forfeited their right to appeal and the appeal was dismissed. Id.

In this case, Mother's Notice of Intent to Appeal also lacks the information required to fulfill the Appellate Rule 9(F) Notice of Appeal requirements. Mother's Notice of Intent to Appeal provides:

Comes now Mother, [], by her counsel, Steven D. Cuvelier, and respectfully files her Notice of Intent to Appeal the Order of Involuntary Termination of Parental Rights entered by this Court on or about the 8th day of March, 2013.
Mother requests this Court to appoint separate outside counsel to appeal the Involuntary Termination and for all other relief in the premises.

Appellant's App. p. 44.

Mother argues that this Notice of Intent to Appeal should suffice because unlike the circumstances in D.L., the Appellate Rule 9(A) thirty-day time limit expired before the trial court appointed Mother's appellate counsel. The trial court approved the order involuntarily terminating Mother's parental rights on March 22, 2013, and her Notice of Intent to Appeal was filed on April 4, 2013. Appellate counsel was appointed on April 24, 2013, more than thirty days after the final judgment was issued.

8

In Sewell v. State, 939 N.E.2d 686 (Ind. Ct. App. 2010), the trial court did not appoint appellate counsel within thirty days of the final judgment. Therefore, after the trial court appointed appellate counsel, the court granted Sewell additional time to file his Notice of Appeal. Our court dismissed Sewell's appeal because the appellate rules do not permit trial courts to expand the time limit prescribed by Appellate Rule 9; therefore, the trial court lacked jurisdiction to grant Sewell additional time to file a Notice of Appeal. Our court dismissed Sewell's appeal because the Notice of Appeal was not filed within the thirty days of the final judgment. Id. at 687.

However, we observed that under the Indiana Post Conviction Rules, Sewell could petition the court for permission to pursue a belated appeal. See id.; see also Ind. Post-Conviction Rule 2; Gutermuth v. State, 868 N.E.2d 427, 429 (Ind. 2007). Specifically, a criminal defendant may be permitted to file a belated appeal where the "failure to file a timely notice of appeal was not due to the fault of the defendant[.]" See P-C.R. 2(1)(a). Appellate Rule 9(A)(5) provides that "[u]nless the Notice of Appeal is timely filed, the right to appeal **shall be forfeited** except as provided by P.C.R. 2." (Emphasis added). Mother is not eligible to file a belated appeal under P.C.R. 2, and her Notice of Appeal was not timely filed; therefore, we conclude that she has forfeited her right to appeal the trial court's order terminating her parental rights.

## II. Termination of Mother's Parental Rights on the Merits

In D.L., although the Parents forfeited their right to appeal the termination orders, our court briefly discussed whether there was any clear error in the trial court's judgment. After acknowledging the "constitutional dimensions of a termination case," our court

addressed whether the evidence was sufficient to support termination of Parents' parental rights, albeit in a cursory fashion. Id. at 214. In light of Mother's constitutional right to establish a home and raise her children,[1] we elect to follow the D.L. court's example and briefly address the sufficiency of the evidence of the termination of Mother's parental rights.

In its findings, the trial court analyzed the factors enumerated in Indiana Code section 31-35-2-4(b) before concluding that Mother's parental rights should be terminated. In her Appellant's brief, Mother only argues that the trial court clearly erred when it concluded that there is a reasonable probability that the conditions that resulted in the removal of the children were not remedied.[2] See In re D.B., 942 N.E.2d 867, 871 (Ind. Ct. App. 2011) ("In deference to the juvenile court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous.").

The record supports Mother's claim that shortly before the December 2012 and January 2013 termination hearings, she had made some progress addressing her issues with substance abuse and her mental health. However, Mother's assertion that she is now

---

[1] Given the constitutional rights implicated in these proceedings, we urge our supreme court to consider allowing belated appeals in cases where the parent's parental rights have been terminated. As our courts have often stated: "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." In re M.B., 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), trans. denied. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. In the Matter of Termination of the Parent Child Relationship of K.S., 750 N.E.2d 832, 837 (Ind. Ct. App. 2001).

[2] Mother does not challenge the trial court's findings that continuation of the parent-child relationship poses a threat to the well-being of the children and that termination of Mother's parental rights was in the children's best interests. See Ind. Code § 31-35-2-4(b). She has therefore waived those arguments on appeal. A.D.S. v. Ind. Dep't of Child Servs., 987 N.E.2d 1150, 1156 n.4 (Ind. Ct. App. 2013), trans. denied.

a "completely different person" is a request to reweigh the evidence and the credibility of the witnesses, which our court will not do.

Mother has a long-standing history of substance abuse, and although she claims to be sober, her prognosis is still poor. Service providers were concerned with good reason in light of her history, that Mother would relapse. Mother also maintains her relationship with Father, who abuses alcohol, and despite the history of domestic violence between them. Mother failed to complete DCS provided services and cancelled multiple visitations with the children. Visitations ultimately ceased in October 2011 when Mother was arrested for criminal confinement. Mother has received services from DCS for many years and still has not progressed in her ability to parent. After reviewing the record, we conclude that Mother cannot establish that the trial court clearly erred in finding that "there is a reasonable probability that the conditions that resulted in the child[ren]'s removal or the reasons for placement outside the home of the parents will not be remedied." See I.C. § 31-25-2-4(b)(2)(B)(i). Simply stated, sufficient evidence supports the trial court's decision to terminate Mother's parental rights.

**Conclusion**

Because Mother's Notice of Appeal was untimely, we dismiss her appeal from the trial court's order terminating her parental rights to J.G. and C.G.

Dismissed.

BRADFORD, J., and PYLE, J., concur.

11