Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEYS FOR APPELLANT:

**STEVEN E. RIPSTRA**
**MELISSA J. HALEY**
Ripstra Law Office
Jasper, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General

**ROBERT J. HENKE**
Deputy Attorney General

**DAVID E. COREY**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN RE THE INVOLUNTARY TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: )<br><br>A.K. & H.K. (minor children) )<br><br>And )<br><br>A.K. (Mother) )<br>    Appellant-Respondent, )<br><br>        vs. )<br><br>THE INDIANA DEPARTMENT OF CHILD SERVICES, )<br>    Appellee-Petitioner. ) | No. 19A01-1403-JT-145 |

APPEAL FROM THE DUBOIS CIRCUIT COURT
The Honorable William E. Weikert, Judge
Cause No. 19C01-1305-JT-107
19C01-1305-JT-108

**August 28, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

A.K.K. (Mother) appeals the involuntary termination of her parental rights to A.K. and H.K. (collectively, the Children). Mother challenges the sufficiency of the evidence supporting the juvenile court's judgment. The State contends the evidence was sufficient to support termination, but contends that Mother's challenge should not be considered on the merits because it is untimely and therefore she has forfeited her right to appeal the order terminating her parental rights.

We affirm.

Viewed in a light most favorable to the trial court's decision and the reasonable inferences drawn therefrom, the facts are that Mother is the biological parent of A.K., born in February 2005, and H.K., born in June, 2006. The Children's biological father died in 2008. Both A.K. and H.K. are autistic and H.K. has a blood disorder. In 2009, the family participated in a six-month informal adjustment (IA) because the Children, ages three and four at the time, were observed throwing items from the second-story balcony of their apartment. Mother was home but asleep at the time. On April 28 of that year, Mother underwent a mental health assessment at Southern Hills Counseling Center (the Counseling Center), where she reported experiencing depression and anxiety. The evaluation noted some parenting deficiencies. The Counseling Center provided services and Mother initially made progress, but her progress diminished over time.

On November 21, 2011, the Dubois County Department of Child Services (DCS) received a report that the Children did not regularly attend school. When they did attend, it was reported that cockroaches occasionally came out of their school bags. DCS again became involved and the family again participated in an IA and services were provided.

2

Although the conditions of the home improved, the Children continued to miss too much school. In February 2012, it was determined that the Children had missed more than fifty percent of the school year. The DCS concluded that the problem stemmed from a lack of cooperation on Mother's part. In an attempt to obtain her cooperation, an at-home CHINS was initiated. On April 16, 2012, Mother admitted that the Children were CHINS and the trial court adjudicated them as such, but determined they could remain with Mother. In-home services through Ireland Home Based Services (Ireland) were commenced.

At an April 30, 2012 dispositional hearing, Terri Teague-Petry, the FCM, reported that Mother had exhibited "no consistent change whatsoever." *Transcript* at 6.[1] The court awarded wardship of the Children to the DCS and ordered Mother to participate in reunification services, including the following: Permit family case managers and service providers to visit her home; enroll in programs recommended by the DCS or service providers; attend all appointments; maintain suitable housing; complete substance-abuse and psychological assessments and follow all recommendations; participate in therapy to address parenting and substance-abuse issues; complete an inpatient treatment program to address her addictions; refrain from using drugs or alcohol and submit to screens for those substances; attend AA/NA meetings; attend all scheduled visits with the Children; maintain regular weekly contact with the DCS; and participate in parent-aid services.

Both children are autistic, and for this reason an adult was required to pick them up when the school bus dropped them off. On May 1, 2012, FCM Teague-Petry received a

---

[1] The pages of the transcript provided on appeal consists of pages that are not numbered.

call from the Children's bus operator informing her that no one was there to pick the Children up and that they would be taken to the police station. This was the third time that Mother had failed to pick up the Children. Teague-Petry went to Mother's home and discovered that Mother was intoxicated. The Children were removed from the home that day. On May 14, 2012, the court approved the Children's removal from the home and placement in foster care.

After the Children were removed in May 2012, Mother visited them only twice, with the last visit occurring in July 2012. During that visit, a visitation schedule was prepared for future visits, but Mother canceled the next visit and did not visit thereafter. Following a hearing on February 4, 2013, the court found that Mother was not complying with the reunification services and approved a concurrent plan of reunification and adoption. On May 7, 2013, DCS filed a petition to terminate Mother's parental rights. On May 28, 2013, the court changed the permanency plant solely to adoption and issued an order relieving DCS from providing further reunification services and visitation for Mother. Also on May 28, 2013, the court issued an order terminating Mother's services and also terminating court-ordered visitation.

The DCS initiated termination proceedings in May 2013. Shortly thereafter, Mother began counseling services at Southern Hills, where another assessment was performed on May 23, 2013. On August 1, 2013, Mother filed a petition to reestablish parenting time, but that request was denied following a hearing. On November 1, 2013, following a termination hearing, the trial court granted the DCS's petition to terminate Mother's parental rights with respect to the Children. The court entered findings of fact and

4

conclusions of law, including the following: Mother did not cooperate with service providers or the DCS in addressing the concerns that led the DCS to become involved with the family; after the Children were removed from the home, Mother rarely visited them and did not maintain regular contact with the FCM; Mother has a "serious alcohol addiction", *Appellant's Appendix* at 14, and was referred to services to address this concern; the FCM observed a "significant improvement" in the Children's behavior after they were placed in foster care, *id.*; Mother failed to (1) keep appointments with the DCS and service providers, (2) submit to alcohol and drug screens, (3) participate in or complete substance-abuse treatment, (4) participate in parent-aid services, and (5) participate in group therapy; Mother continued to abuse alcohol and was hospitalized on at least two occasions as a direct result of alcohol abuse; the Children "thrived" in their foster care placement, *id.*, and made "remarkable" progress in their ability to speak and learn to use utensils to eat; they also became potty trained and were more social; and Mother had no income and lived on the Social Security checks received on the Children's behalf. The court also found that Mother had not demonstrated an ability to provide for herself or to care for the Children. The court found that the DCS had a satisfactory plan for the care and treatment of the Children, which was adoption.

The court concluded that the DCS had proved by clear and convincing evidence that there was a reasonable probability that the conditions resulting in the Children's removal from the home will not be remedied, that the continuation of the parent-child relationship posed a threat to the well-being of the Children, and that termination of the parent-child relationship was in the Children's best interest.

5

1.

The order terminating Mother's parental rights was entered on November 1, 2013. Under Indiana Appellate Rule 9, in order to preserve her right to appeal this ruling, Mother was required to file her notice of appeal by December 2, 2013. Instead, Mother filed a motion to correct error on January 15, 2014. Pursuant to App. R. 9, the filing deadline for that motion was also December 2, 2013. The State filed a motion in opposition to the motion to correct error, arguing that it was not timely filed and should be denied on that basis. The trial court denied the motion to correct error on March 31, 2014, apparently on the merits. A CCS entry indicated that the trial court believed its failure to advise Mother of her constitutional right to an appeal extended the deadline until such time as this advisement could be given. The CCS reflects that the court advised Mother on December 20, 2013 that she had thirty days therefrom to initiate the appeal process. The trial court erred in extending the deadline accordingly.

In *Termination of Parent-Child Relationship of J.G. v. Ind. Dep't of Child Servs.*, 4 N.E.3d 814 (Ind. Ct. App. 2014), *trans. denied*, the parent filed her notice of appeal well beyond the thirty-day limit set out in Appellate Rule 9. The parent argued, however, that she should be allowed to proceed with the appeal because the juvenile court did not appoint appellate counsel until after the thirty-day time limit had expired, which prompted the trial court to grant additional time to file the appeal. We reversed, stating "the appellate rules do not permit trial courts to extend the time limit prescribed by Appellate Rule 9." *Id.* at 819. That rule applies with equal force in the present case. Accordingly, Mother has forfeited her right to appeal the trial court's order terminating her parental rights.

6

2.

After determining that the parent had forfeited her right to appeal the order termination of her parental rights because she failed to file a timely notice of appeal, this court nevertheless briefly addressed her arguments on the merits, which concerned the sufficiency of the evidence supporting termination. The court observed that such was done because of the "constitutional dimensions of a termination case." *Id.* at 820 (quoting *In re the Involuntary Termination of the Parent–Child Relationship of D.L.,* 952 N.E.2d 209, 214 (Ind. Ct. App. 2011)), *trans. denied.* We will do the same.[2]

Mother contends the DCS did not present sufficient evidence to prove she had failed to remedy the conditions resulting in the Children's removal and that continuation of the parent-child relationship between her and the Children threatened the Children's emotional and physical well-being. In order to effect an involuntary termination of parental rights the State must allege and prove that one or the other is present, and must do so by clear and convincing evidence. *See* Ind. Code Ann. § 31-37-14-2 (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly). We review the trial court's weighing of the evidence under a two-step, highly deferential standard of review. *In re E.M.*, 4 N.E.3d 636, 642 (Ind. 2014) (quoting *In re G.Y.*, 904 N.E.2d 1257 (Ind. 2009)). We determine whether the evidence clearly and convincingly supports the findings, and next whether the findings

---

[2] In undertaking this abbreviated review focused only upon the sufficiency of the evidence justifying the termination of Mother's parental rights, we decline to address Mother's argument concerning placement with the maternal grandmother.

clearly and convincingly support the judgment. *In re E.M.*, 4 N.E.3d 636  In so doing, we neither reweigh evidence nor assess witness credibility, but instead consider only the evidence supporting the judgment, together with reasonable inferences to be drawn from the evidence. *Id.*

We begin with Mother's claim that the evidence was not sufficient to prove there is a reasonable probability that the conditions resulting in the Children's removal from the home will not be remedied.  There was evidence that Mother's participation in services during the period of informal adjustment and prior to the Children's removal was minimal and inconsistent.  Mother consistently failed to cooperate with the DCS and service providers, often refusing to answer the door when they came to her home.  Mother's parent-aid services with Ireland were terminated because she failed to participate and make progress.  Moreover, Mother has a history of alcoholism, which was a significant causal factor in the conditions that led to the involvement of the DCS with her children in the first place.  Mother failed to adequately address this problem and in fact continued to drink throughout this case.

Following an assessment, Seven Hills recommended that Mother participate in group therapy and attend Alcoholics Anonymous (AA) meetings as often as possible. Martha Brown, Mother's substance-abuse counselor at Southern Hills, testified that she did not begin working with Mother until July 9, 2013.  Brown could issue only a guarded prognosis for Mother because of Mother's long history of substance dependence, and in light of the fact that Mother had not spent much time building a strong foundation for recovery.  Although Mother was hospitalized several times because of her alcoholism, she

8

never followed through on recommended treatment. She also failed to participate in recommended group therapy. Although Mother did participate in some services prior to the termination hearing, it was within the trial court's discretion to consider this late participation in the larger context of her history of unresolved substance abuse and lack of participation in services after the Children's removal. It is also noteworthy that Mother visited the Children on only two occasions after they were removed, which permits a reasonable inference that she lacked a commitment to do whatever was necessary in order to preserve the parent-child relationship with her children. In summary, there was sufficient evidence to support the trial court's conclusion that there is a reasonable probability that the conditions resulting in the Children's removal from the home will not be remedied.

Having determined that the juvenile court's conclusion regarding the remedy of conditions is not clearly erroneous, we need not address the threat posed to the Children's well-being because Ind. Code App. § 31-35-2-4(b)(2)(B) (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly) is written in the disjunctive. *A.J. v. Marion Cnty. Office of Family & Children*, 881 N.E.2d 706, 717 (Ind. Ct. App. 2008), *trans. denied*.

Judgment affirmed.

VAIDIK, C.J., and MAY, J., concur.