ATTORNEY FOR APPELLANT
Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEY FOR APPELLEE
Jamie H. Harvey
Smith Harvey Law Office
Connersville, Indiana

_____

# In the
# Indiana Supreme Court



No. 21S01-1409-AD-592

IN THE MATTER OF THE
ADOPTION OF O.R.,

N.R.,

*Appellant (Plaintiff below),*

v.

K.G. AND C.G.,

*Appellees (Defendants below).*

_____

Appeal from the Fayette Circuit Court, No. 21C01-1207-AD-196
The Honorable Eugene A. Stewart, Special Judge

_____

On Petition To Transfer from the Indiana Court of Appeals, No. 21A01-1307-AD-322

_____

**September 25, 2014**

**Rucker, Justice.**

The biological parent of a minor child attempted to appeal the trial court's order granting an adoption petition in favor of third parties. Because the Notice of Appeal was not timely filed, the Court of Appeals dismissed the case on grounds that it lacked jurisdiction to hear the appeal. Although we affirm the trial court's judgment, we conclude the untimely filing of a Notice of Appeal is not a jurisdictional bar precluding appellate review.

**Facts**

O.R. ("Child") was born out of wedlock in August 2006, and when Child was four months old she was placed in foster care with K.G. and C.G. ("Adoptive Parents"). Child has lived with Adoptive Parents for most of her life, except for a period of about one year around 2007, when she lived with her biological parents. During that time Adoptive Parents exercised regular visitation with Child. At some point in 2008, Child's biological father N.R. ("Father") contacted Adoptive Parents and asked them to assume guardianship of Child. Father later changed his mind, but the trial court awarded Adoptive Parents temporary guardianship in 2008 and permanent guardianship in June 2009. Also in 2009, Father was serving a seven and a half year sentence in the Indiana Department of Correction for domestic battery and an adjudication as a habitual offender.[1] In July 2012, Adoptive Parents filed a petition to adopt Child, who by that time was six years old. Child's biological mother consented to the adoption, but Father refused to consent. After a hearing at which Adoptive Parents and Father appeared with counsel, the trial court entered an order on May 9, 2013 in favor of Adoptive Parents. Among other things the trial court concluded that Father's consent to adoption was not required because of Father's failure to communicate with and provide support for Child.

The deadline for filing a Notice of Appeal from the trial court's order was June 10, 2013. Asserting that he was acting on the advice of his trial counsel, Father wrote a letter to the trial court clerk which the clerk filed on June 6, 2013 requesting appointment of appellate counsel "for the purpose of appealing the decision rendered" by the trial court. Appellant's App. at 52.

---

[1] Apparently Father was released from incarceration in August of 2014. See Indiana Department of Correction Offender Database, www.in.gov/apps/indcorrection/ofs/ofs?previous_page=1&detail=202681 (indicating Father is presently on parole).

2

Father's trial counsel did not file a Notice of Appeal but on June 19, 2013, nine days after the Notice of Appeal was due, counsel filed a motion to withdraw. The trial court granted the motion on July 1 and on July 3—twenty-three days after the deadline to appeal had passed—entered an order appointing appellate counsel for Father. Fifteen days later, on July 18, Father's new counsel filed in the Court of Appeals a petition to accept "Amended Notice of Appeal," which was tendered with the petition. Counsel argued that Father's June 6 *pro se* letter to the trial court clerk should be deemed a timely filed Notice of Appeal in substantial compliance with the appellate rules. On August 16, the motions panel of the Court of Appeals granted Father's petition to accept his Amended Notice of Appeal.

After the issues were fully briefed on the merits, in a memorandum decision, the writing panel of the Court of Appeals *sua sponte* dismissed Father's appeal on grounds that it lacked subject matter jurisdiction because Father did not timely file a Notice of Appeal. See In re Adoption of O.R., No. 21A01-1307-AD-322 (Ind. Ct. App. Feb. 28, 2014). We now grant Father's petition to transfer thereby vacating the Court of Appeals' dismissal of Father's appeal. In this opinion we explore the question of appellate jurisdiction to entertain this appeal, and address the merits of Father's claims. In doing so, we affirm the judgment of the trial court. Additional facts are provided below as necessary.

## Discussion

### I. Historical Overview

This Court promulgated the first Indiana Rules of Appellate Procedure in 1970. See Judge Robert H. Staton & Gina M. Hicklin, The History of the Court of Appeals of Indiana, 30 Ind. L. Rev. 203, 216 (1997). The Rules provided in pertinent part, "[a]n appeal is initiated by filing with the clerk of the trial court a praecipe designating what is to be included in the record of the proceedings." App. R. 2(A) (1970). The Rules further provided: "Every appeal shall be deemed submitted and the appellate tribunal deemed to have acquired jurisdiction thereof on the date the record of the proceedings is filed with the clerk of the Supreme and Appellate Courts." App. R. 3(A) (1970). By 1999 the language of the Rules had been revised to provide that the praecipe "shall be filed within thirty (30) days after the entry of a final judgment . . . ." and

"[u]nless the praecipe is filed within such time period, *the right to appeal will be forfeited*."
App. R. 2(A) (1999) (emphasis added).  In January 2001 an entirely new set of Rules of
Appellate Procedure went into effect.  Among them was Appellate Rule 9(A), which provided in
relevant part, "[a] party initiates an appeal by filing a Notice of Appeal with the trial court clerk
within thirty (30) days after the entry of a Final Judgment. . . .  Unless the Notice of Appeal is
timely filed, *the right to appeal shall be forfeited* except as provided by P.C.R. 2." (emphasis
added).  Becoming effective in 2012, the current Appellate Rule 9(A) is similarly worded:

> A party initiates an appeal by filing a Notice of Appeal with the
> Clerk . . . within thirty (30) days after the entry of a Final
> Judgment is noted in the Chronological Case Summary. * * *
> Unless the Notice of Appeal is timely filed, *the right to appeal
> shall be forfeited* except as provided by P.C.R. 2.

App. R. 9(A)(1), (5) (emphasis added).


Consistent throughout the various iterations of the Rules is the notion that forfeiture of an
appeal is the price one pays for the untimely filing of the necessary papers to effect an appeal.  In
accord with the notion of forfeiture, this Court has long taken the position that timely filing is a
jurisdictional prerequisite to the consideration of an appeal.  Stated somewhat differently, we
have consistently held that a party's failure to file timely the necessary papers deprived the
appellate courts of jurisdiction to entertain the appeal.  See, e.g., Vail v. Page, 93 N.E. 705, 706
(Ind. 1911) ("[B]y the failure to file the transcript within the statutory period . . . this court never
acquired jurisdiction of the appeal . . . ."); Davis v. Pelley, 102 N.E.2d 910, 911 (Ind. 1952)
("The assignment of errors constitutes appellant's complaint in this court, . . . it is a requisite to
any appeal, and without a proper assignment of errors no jurisdiction is conferred upon this
court." (citations omitted)); Claywell v. Review Bd. of Ind. Dep't of Emp't & Traning Svcs., 643
N.E.2d 330, 330 (Ind. 1994) ("This Court has considered perfecting a timely appeal a
jurisdictional matter."); Greer v. State, 685 N.E.2d 700, 701, 703 (Ind. 1997) (observing "[t]his
Court historically has treated the failure to file a timely praecipe as a jurisdictional defect,
necessitating dismissal of the appeal" and holding that the Court of Appeals lacked subject
matter jurisdiction over a belated appeal from a trial court's denial of credit time following
revocation of probation); Davis v. State, 771 N.E.2d 647, 649 (Ind. 2002) (citing Greer for the

proposition that "the Court of Appeals lacks subject matter jurisdiction over appeals other than direct appeals, unless such appeals or petitions are timely brought"). The Court of Appeals, in this case and others, has correctly followed our precedent on the question. See, e.g., Sewell v. State, 939 N.E.2d 686, 686 (Ind. Ct. App. 2010) ("The timely filing of a Notice of Appeal is a jurisdictional prerequisite, and failure to conform to the applicable time limits results in forfeiture of an appeal.").

## II. Is the timely filing of a Notice of Appeal actually a matter of jurisdiction?

Subsequent to this Court's last pronouncement on the issue in Davis,[2] we have noted "a tendency to confuse jurisdictional defects with legal errors." R.L. Turner Corp. v. Town of Brownsburg, 963 N.E.2d 453, 457 (Ind. 2012) (citing K.S. v. State, 849 N.E.2d 538, 541 (Ind. 2006) (citation omitted)). This "tendency in procedural law to treat various kinds of serious procedural errors as defects in subject matter jurisdiction" has been shared by the bench and bar alike and has not been limited to Indiana. K.S., 849 N.E.2d at 541 (quotation omitted). Indeed, the United States Supreme Court has confronted the issue as well. See Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 161 (2010) (acknowledging the Court has "sometimes mischaracterized claim-processing rules or elements of a cause of action as jurisdictional limitations" and noting "[o]ur recent cases evince a marked desire to curtail such drive-by jurisdictional rulings, which too easily can miss the critical differences between true jurisdictional conditions and nonjurisdictional limitations on causes of action") (alteration omitted) (internal quotations and citations omitted). As we observed in K.S.:

> [W]hile we might casually say, "Judge Flywheel assumed jurisdiction," or "the court had jurisdiction to impose a ten-year sentence," such statements do not have anything to do with the law of jurisdiction, either personal or subject matter. *Real* jurisdictional problems would be, say, a juvenile delinquency adjudication entered in a small claims court, or a judgment

---

[2] Davis involved an attempted belated appeal of the denial of a criminal defendant's motion to correct erroneous sentence. We noted that our cases had consistently held that Post-Conviction Rule 2 applies only to direct appeals of criminal *convictions* and could not be used to salvage Davis' late appeal of the denial of his motion. Davis, 771 N.E.2d at 649. As explained in more detail above our language in Davis regarding the Court of Appeals' "jurisdiction" and "authority" over Davis' appeal is problematic. However, the ultimate conclusion in that case is correct.

5

> rendered without any service of process. Thus, characterizing other sorts of procedural defects as "jurisdictional" *misapprehends* the concepts.

K.S., 849 N.E.2d at 541-42 (second emphasis added) (citation omitted). We are of the view that our case authority characterizing as "jurisdictional" the timely filing of a Notice of Appeal is just such a misapprehension.

To begin, the language of current Rule 9(A) does not mention jurisdiction at all.[3] We reiterate, the Rule provides in relevant part, "[a] party initiates an appeal by filing a Notice of Appeal with the Clerk . . . within thirty (30) days after the entry of a Final Judgment is noted in the Chronological Case Summary. . . . Unless the Notice of Appeal is timely filed, *the right to appeal shall be forfeited* except as provided by P.C.R. 2." App. R. 9(A)(1), (5) (emphasis added). Forfeiture and jurisdiction are not the same. "Forfeiture" is defined in part as "[t]he loss of a right, privilege, or property because of a . . . breach of obligation, or neglect of duty." Black's Law Dictionary 765 (10th ed. 2014); see also Plank v. Cmty. Hosps. of Ind., Inc., 981 N.E.2d 49, 54 (Ind. 2013) (noting "forfeiture is the failure to make the timely assertion of a right") (quoting United States v. Olano, 507 U.S. 725, 733 (1993)). Jurisdiction on the other hand "applies only to prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) implicating that authority" and "speak[s] to the power of the court *rather than to the rights or obligations of the parties*.'" Reed Elsevier, 559 U.S. at 160-61 (emphasis added) (internal quotations and citations omitted); see also K.S., 849 N.E.2d at 540 (noting "[s]ubject matter jurisdiction is the power to hear and determine cases of the general class to which any particular proceeding belongs" and "[p]ersonal jurisdiction requires that appropriate process be effected over the parties").

In essence a party loses his or her right to appeal for failing to file timely a Notice of Appeal. The Rule is clear that under such circumstance "the right to appeal shall be forfeited." App. R. 9(A)(5). But a party's forfeiture—or loss of this right—does not also mean the appellate courts somehow lose their authority to hear and determine the general class of cases to which a

---

[3] By contrast Appellate Rules 4 thru 8 are included under Title II which is specifically denominated "Jurisdiction."

party's case belongs or over the party attempting to assert its right of appeal. Stated somewhat differently, although a party forfeits its right to appeal based on an untimely filing of the Notice of Appeal, this untimely filing is not a jurisdictional defect depriving the appellate courts of authority to entertain the appeal. The case of Packard v. Shoopman, 852 N.E.2d 927 (Ind. 2006), is instructive. In that case, a taxpayer who had been denied relief by the Indiana Board of Tax Review failed to file his petition for judicial review within the statutorily prescribed period. See id. at 928-29. More than two years after the taxpayer filed the untimely appeal with the Tax Court, the Assessor moved to dismiss the appeal on grounds the Tax Court lacked subject matter jurisdiction over the appeal. The Assessor relied on Indiana Code section 33-26-6-2 which provides: "If a taxpayer fails to comply with any statutory requirement for the initiation of an original tax appeal, the tax court does not have jurisdiction to hear the appeal." Affirming the tax court's denial of the motion to dismiss, we observed that the statute as well as our cases referring to "jurisdiction" in the context of timely filing all predated our decision in K.S. We concluded:

> [T]imely filing of a complaint in the Tax Court is "jurisdictional" only in the sense that it is a statutory prerequisite to the docketing of an appeal in the Tax Court . . . . Timely filing relates to neither the merits of the controversy nor the competence of the court to resolve it.

Id. at 931, 32. We reach a similar conclusion here. The untimely filing of a Notice of Appeal is not a jurisdictional defect depriving the appellate courts of the ability to entertain an appeal. Instead, the timely filing of a Notice of Appeal is jurisdictional only in the sense that it is a Rule-required prerequisite to the initiation of an appeal in the Court of Appeals. Timely filing relates neither to the merits of the controversy nor to the competence of the courts on appeal to resolve the controversy.

**III. How should we apply the mandate declaring, "the right to appeal shall be forfeited"?**

In this case Father's untimely filing of his Notice of Appeal resulted in Father losing his right to appeal—or in the words of Appellate Rule 9(A) Father's "*right to appeal shall be forfeited*." We repeat for emphasis however that this fact does not deprive the appellate courts of

jurisdiction to entertain the appeal. Rather, the right to appeal having been forfeited, the question is whether there are extraordinarily compelling reasons why this forfeited right should be restored. In this case we answer the question in the affirmative. First, "our appellate rules exist to facilitate the orderly presentation and disposition of appeals . . . and [as] our Court of Appeals has noted "we are mindful that our procedural rules are merely means for achieving the ultimate end of orderly and speedy justice." In re Adoption of T.L., 4 N.E.3d 658, 661 n.2 (Ind. 2014) (alterations omitted) (internal quotations omitted). This policy has been incorporated into our Rules of Appellate Procedure. See App. R. 1 (providing in part: "The Court may, upon the motion of a party or the Court's own motion, permit deviation from these Rules."). Thus, despite the "shall be forfeited" language of Rule 9(A), the Rules themselves provide a mechanism allowing this Court to resurrect an otherwise forfeited appeal.

Second, four days before the Notice of Appeal was due, Father sought appointment of appellate counsel for the express purpose of "appealing the decision rendered" by the trial court. Appellant's App. at 52. Counsel was ultimately appointed, but long after the deadline for the timely filing of his Notice of Appeal. Even then, appellate counsel thereafter filed an Amended Notice of Appeal, which the motions panel of the Court of Appeals accepted as being sufficient.

Third, and perhaps most important, the Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. See Pierce v. Soc'y of Sisters, 268 U.S. 510, 534-35 (1925); Meyer v. Nebraska, 262 U.S. 390, 399 (1923). A parent's interest in the care, custody, and control of his or her children is "perhaps the oldest of the fundamental liberty interests." Troxel v. Granville, 530 U.S. 57, 65 (2000). And as we have acknowledged on more than one occasion "the parent-child relationship is 'one of the most valued relationships in our culture.'" In re I.A., 934 N.E.2d 1127, 1132 (Ind. 2010) (quoting Neal v. DeKalb Cnty. Div. of Family & Children, 796 N.E.2d 280, 285 (Ind. 2003)); see also Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005).

It is this unique confluence of a fundamental liberty interest along with "one of the most valued relationships in our culture" that has often influenced this Court as well as our Court of Appeals to decide cases on their merits rather than dismissing them on procedural grounds. See,

e.g., T.L., 4 N.E.3d at 661 n.2 (denying motion to dismiss appeal based on the untimely filing of a Notice of Appeal noting, "[b]ecause of the importance surrounding an individual's right to parent his children, we deny the Appellees' Motion to Dismiss and proceed to the merits of Father's claim"); In re K.T.K, 989 N.E.2d 1225, 1229 (Ind. 2013) (proceeding to a merits determination even though the appeal of the trial court's amended order terminating Mother's parental rights was not timely filed); In re D.L., 952 N.E.2d 209, 212-14 (Ind. Ct. App. 2011) (discussing the merits of the claim although the purported Notice of Appeal was defective), trans. denied; In re J.G and C.G., 4 N.E.3d 814, 820 (Ind. Ct. App. 2014) (electing to "follow the D.L. court's example" and addressing Mother's claim notwithstanding a defective Notice of Appeal "[i]n light of Mother's constitutional right to establish a home and raise her children . . . ." (footnote omitted)). Here, in light of Appellate Rule 1, Father's attempt to perfect a timely appeal, and the constitutional dimensions of the parent-child relationship, we conclude that Father's otherwise forfeited appeal deserves a determination on the merits.

## IV. The Merits of Father's Claims

### Standard of Review

"When reviewing adoption proceedings, we presume that the trial court's decision is correct, and the appellant bears the burden of rebutting this presumption." In re Adoption of J.L.J.and J.D.J., 4 N.E.3d 1189, 1194 (Ind. Ct. App. 2014) (citation omitted), trans. denied. We generally give considerable deference to the trial court's decision in family law matters, because we recognize that the trial judge is in the best position to judge the facts, determine witness credibility, "get a feel for the family dynamics," and "get a sense of the parents and their relationship with their children." MacLafferty v. MacLafferty, 829 N.E.2d 938, 940 (Ind. 2005). We will not disturb the trial court's ruling "unless the evidence leads to but one conclusion and the trial judge reached an opposite conclusion." Rust v. Lawson, 714 N.E.2d 769, 771 (Ind. Ct. App. 1999) (citation omitted), trans. denied. The trial court's findings and judgment will be set aside only if they are clearly erroneous. In re Paternity of K.I., 903 N.E.2d 453, 457 (Ind. 2009). "A judgment is clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment." Id. "We will neither reweigh the evidence nor assess the

9

credibility of witnesses, and we will examine only the evidence most favorable to the trial court's decision." In re Adoption of A.M., 930 N.E.2d 613, 616 (Ind. Ct. App. 2010).

**Analysis**

Father challenges the trial court's judgment granting Adoptive Parents' petition to adopt O.R. without his consent. Generally, a trial court may only grant a petition to adopt a child born out of wedlock who is less than eighteen years of age if both "[t]he mother of [the] child" and "the father of [the] child whose paternity has been established" consent to the adoption. Ind. Code § 31-19-9-1(a)(2). However, Indiana Code section 31-19-9-8 provides that consent to an adoption is not required from, among others, any of the following:

> (1) A parent or parents if the child is adjudged to have been abandoned or deserted for at least six (6) months immediately preceding the date of the filing of the petition for adoption.
>
> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
>
>> (A) fails without justifiable cause to communicate significantly with the child when able to do so; or
>>
>> (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.
>
> * * *
>
> (11) A parent if: . . .
>
>> (B) the best interests of the child sought to be adopted would be served if the court dispensed with the parent's consent.

I.C. § 31-19-9-8(a). Here, the trial court found that all of the foregoing statutory provisions applied to Father. And in this appeal Father challenges the trial court's findings with respect to each provision. However, the statute is written in the disjunctive such that the existence of any one of the circumstances provides sufficient ground to dispense with consent. In re Adoption of

10

D.C., 928 N.E.2d 602, 606 (Ind. Ct. App. 2010) (citation omitted), trans. denied. Because we conclude the trial court properly relied on at least one statutory provision—namely, that for a period of at least one year Father failed without justifiable cause to communicate significantly with O.R. although he was able to do so, see I.C. § 31-19-9-8(a)(2)(A)—we do not address other provisions on which the trial court may also have relied.

Father does not dispute that O.R. was in the custody of another person for a period of at least one year. Rather he contends that he did not fail without justifiable cause to communicate significantly with O.R. when able to do so. We disagree. By Father's own admission, the only communication he had with O.R. in over a six-year period of time was a phone call in 2011. See Br. of Appellant at 7. He admits that while incarcerated over the last several years, he has never attempted to write O.R. a letter or to communicate with her in any other way. Father counters however that he asked Adoptive Parents to bring O.R. to visit him in prison, which they declined to do on grounds that they believed a prison was not an appropriate environment for a then-three-year-old child. See Tr. at 15-16. Father says he believed Adoptive Parents were required to bring O.R. to visit him in prison. See Tr. at 21 ("Judge Pflum in this courtroom right here . . . told [Adoptive Parents] . . . when I signed the guardianship papers that they was supposed to bring [O.R.] to come and see me when I was incarcerated . . . which they never done."). But Father's statement is contradicted by the evidence of record. Specifically the record reveals that when the trial court granted guardianship of O.R. to Adoptive Parents in June of 2009, Father was the subject of a protective order prohibiting him from contact with O.R. which remained in effect until September of 2010. See Appellee's App. at 1-2; Tr. at 25. At the time Father requested the jail visitation the protective order was still in effect. And Father makes no claim that he requested visitation anytime thereafter.

As for his failure to attempt mail communication with O.R. after the protective order had expired, Father claims this was because he did not have O.R.'s address. However, the trial court found: "[F]ather was aware that Petitioners were represented by counsel in regard to the guardianship of [O.R.] and could have initiated contact through their counsel or the court to communicate with [O.R.]." Appellant's App. at 6 (Adoption Decree at 2). Father blames his failure to communicate with O.R. on his "unfamiliarity with the court system[]." Reply Br. of

11

Appellant at 2 ("[T]he Record does not show Father knew he could [pursue communication through the courts]" (emphasis omitted)). But the record reflects that Father was incarcerated in part based on his adjudication as a habitual offender, see Tr. at 19, undermining Father's claim of unfamiliarity with the court system. These facts do not demonstrate that Father was unable to communicate with O.R., but only that he chose not to investigate reasonable means of doing so.

Based on the record before us there was clear and convincing evidence before the trial court that while O.R. was "in the custody of another person [and] for a period of at least one (1) year [Father] . . . fail[ed] without justifiable cause to communicate significantly with [O.R.] when able to do so." I.C. § 31-19-9-8(a)(2)(A). Father's consent to the adoption of O.R. was therefore not required.

Nonetheless, "[e]ven if a court determines that a natural parent's consent is not required for an adoption, the court must still determine whether adoption is in the child's best interests." In re Adoption of M.S., 10 N.E.3d 1272, 1281 (Ind. Ct. App. 2014) (citing I.C. § 31-19-11-1(a)(1)). Here the trial court concluded the adoption is in O.R.'s best interests finding in support, among other things, that Adoptive Parents "have provided a loving, caring, safe and stable home for [O.R.] during her formative years [and] have the . . . desire to continue raising her . . . ." Further, O.R. has "been in the custody of [Adoptive Parents] for six (6) years and a part of [their] family," and "[F]ather is currently incarcerated for a domestic battery conviction." Appellant's App. at 6 (Adoption Decree at 2). Father responds that Adoptive Parents' provision of a "stable, permanent environment alone is not sufficient to support termination." Br. of Appellant at 12. While this may be true, the trial court's conclusion was not made on this basis alone. The trial court noted that for six of O.R.'s nearly eight years of life, she has known no home other than the home of Adoptive Parents. Also, Father was incarcerated at the time of the trial court's order. Father pointed out in his briefing that he is due to be released in August of 2014 and thus his incarceration "should not be the deciding factor." Br. of Appellant at 9.[4] In support Father cites two opinions of this Court in which we reversed the termination of parental rights where incarcerated parents were soon to be released from prison. See In re G.Y., 904 N.E.2d 1257

---

[4] The Brief of Appellant was filed October 3, 2013, well in advance of Father's projected release date. Father's recent release does not affect our analysis.

(Ind. 2009) and <u>In re J.M.</u>, 908 N.E.2d 191 (Ind. 2009). As in those cases, it appears Father has made great improvement during his period of incarceration. <u>See</u> Tr. at 30. But both of these cases are readily distinguishable from Father's in that the parents had an established relationship with the children prior to incarceration or maintained significant communication with them while in prison. <u>See</u> <u>G.Y.</u>, 904 N.E.2d at 1264; <u>J.M.</u>, 908 N.E.2d at 194. In other words, those parents had a "demonstrated commitment and interest in maintaining a parental relationship" with the child. <u>G.Y.</u>, 904 N.E.2d at 1265. Furthermore, unlike G.Y. and J.M., O.R. has no existing relationship with Father. <u>See</u> Tr. at 31 (Father's counsel acknowledging that Father does not expect "to have a warm happy greeting from his long lost daughter" when he is released from incarceration). The trial court did not err in finding Father's one telephone call with O.R. in six years, even when considered in light of his statement that "he is interested in O.R.'s well being and does not want her to be adopted," Br. of Appellant at 4, was not sufficient to outweigh the effect of his incarceration in the assessment of O.R.'s best interests.

In sum not only does the record support the trial court's conclusion that Father's consent to the adoption of O.R. was not required, but the record also supports the trial court's conclusion that the Adoptive Parents' adoption of O.R. is in the child's best interest. We find no error in this regard.

## Conclusion

We affirm the judgment of the trial court.

Rush, C.J., and Dickson, David and Massa, JJ., concur.

13