## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 14 2016, 8:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

John A. Cremer
Jonathan E. Lamb
Cremer & Cremer
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE,
STUART G. KELLY

Jay Curts
John V. Maurovich
Alex Emerson
Coots, Henke & Wheeler, P.C.
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Patrick J. Overman,

*Appellant-Defendant,*

v.

Estate of Shirley Ann Overman, William Scott Overman, the Executor,

*Appellee,*

Stuart G. Kelly,

*Appellee-Claimant.*

November 14, 2016

Court of Appeals Case No.
27A05-1510-EU-1561

Appeal from the Grant Superior Court

The Honorable Warren Haas, Judge

Trial Court Cause No.
27D03-1209-EU-140

**Pyle, Judge.**

# Statement of the Case

Patrick J. Overman ("Overman") appeals the trial court's order requiring the Estate of Shirley A. Overman ("the Estate") to apply his share of the Estate to repay money he owed to Stuart G. Kelly ("Kelly") pursuant to three promissory notes. Because we conclude that Overman forfeited his right to appeal by failing to file a timely notice of appeal and there are no extraordinarily compelling circumstances for us to restore that right, we dismiss Overman's appeal.

We dismiss.

# Issue

Whether Overman forfeited his right to appeal by failing to file a timely notice of appeal.

# Facts

Between April 2010 and July 2011, Overman drafted and executed three promissory notes ("the Notes") to Kelly for various amounts. On April 30, 2010, he executed the first promissory note ("Note 1") in the amount of $50,000;[1] on December 15, 2010, he executed the second promissory note ("Note 2") in the amount of $15,000; and on July 22, 2011, he executed the

---

[1] In spite of the $50,000 listed on the promissory note, it is undisputed that Kelly only loaned Overman $25,000.

third promissory note ("Note 3") to Kelly in the amount of $24,000.[2] Note 3 provided that the Notes would become mature—meaning payment would become due—on the earlier of two dates: (1) fifteen days after Overman's receipt of escrowed royalties paid to him in another cause, Cause Number 08-11-18261-CV ("the Texas lawsuit"); or (2) the distribution of the Estate. Also, the Notes specified that Kelly was required to give Overman written notice in the case of default and ten days to cure the default before exercising any legal remedies.

[4] On September 7, 2012, over a year after Overman had executed Note 3 but before Overman had received funds from the Texas lawsuit or a distribution from the Estate, Kelly filed a complaint ("Debt Case") seeking to recover the amount owed under the Notes.[3] Overman filed an Answer, arguing that: (1) the Notes were not yet mature because he had not received funds from the Texas lawsuit or a distribution from the Estate; (2) Kelly had failed to provide him with written notice of default and a period to cure, as required under the Notes; (3) the terms of the Notes violated Indiana limitations on consumer-related loans; and (4) Kelly had breached the terms of the Notes by filing his

---

[2] The interest rates for the Notes varied, as well. Note 1 required Overman to pay zero percent interest before the note's maturity and ten percent interest after the note's maturity. Note 2 required Overman to pay fifty percent interest if he repaid the note "on or before [the] due date" and one hundred percent if "paid after [the] due date." (App. 48). Note 3 required Overman to pay twenty-five percent interest if the amounts lent under Note 3 were repaid before January 31, 2012; fifty percent interest if the amounts were repaid between January 31, 2012 and July 31, 2012; and one hundred percent interest if the amounts were repaid after July 31, 2012.

[3] The Debt Case is distinct from the instant case and was filed under Cause Number 27D01-1209-CC-000939.

complaint before their maturity date and, therefore, Kelly had unclean hands and could not recover. Upon Overman's request, the trial court ordered Overman to pay the court $64,000, to be held in escrow pending the disposition of the case, which Overman did.

[5] Subsequently, on January 10, 2014, Overman filed a motion for summary judgment on Kelly's complaint, again arguing, in relevant part, that the Notes had not been mature when Kelly filed his complaint. On October 29, 2014, the trial court granted Overman's motion, concluding that Kelly's complaint had not been ripe when he filed it because the notes had not yet matured and because Kelly had not provided Overman with written notice of default as required under the Notes. The trial court awarded Overman $16,630.24 in attorney fees based on its conclusion that Kelly had frivolously, unreasonably, and without ground filed and continued to litigate his complaint. It then ordered the clerk to pay the balance of Overman's $64,000 in escrow to Kelly, which it held was "also a credit to [Overman] for any amounts [Overman] may owe [Kelly] in relation to the notes." (App. 40).

[6] In the meantime, Kelly and Overman had become parties in the instant case concerning the disbursement of the Estate ("Estate Case"). On August 28, 2015, the trial court entered a final judgment in the Estate Case. In its final judgment, it "with consent of the parties . . . resolve[d] the issues that were not finally disposed of in the Court's October 29, 2014 Order Granting [Overman's] Motion for Summary Judgment" in the Debt Case. (App. 29). Specifically, it held that, after Overman's escrow funds from the Debt Case had been applied

to the Notes, Overman still owed Kelly a balance of $49,785.84, including interest. Finding that Overman had "authorized payment of the amount owed . . . from his interest in the Estate," the trial court ordered the Estate to pay the amount Overman still owed from his share of the Estate. (App. 33). Overman now appeals.

## Decision

On appeal, Overman argues that the trial court erred in allowing Kelly to recover under the Notes because Kelly materially breached the terms of the Notes when he filed the Debt Case before the Notes had matured. In support of this argument, Overman cites to Indiana precedent holding that a party first guilty of a material breach of contract may not maintain an action against, or recover damages from, the other party to the contract. *See Ream v. Yankee Park Homeowner's Ass'n*, 915 N.E.2d 536, 547 (Ind. Ct. App. 2009), *trans. denied.* Alternatively, Overman argues that the trial court inappropriately calculated the interest that he owed Kelly under the Notes. In response, Kelly argues that Overman forfeited his claims by failing to file a timely notice of appeal. Because we find Kelly's argument dispositive, we need not address Overman's arguments.

Pursuant to Appellate Rule 9(A):

> A party initiates an appeal by filing a Notice of Appeal with the Clerk . . . within thirty (30) days after the entry of a Final Judgment is noted in the Chronological Case Summary. . . . Unless the Notice of Appeal is timely filed, the right to appeal shall be forfeited[.] . . .

The trial court signed its final judgment in the Estate Case on August 28, 2015. There is an entry in the chronological case summary ("CCS") on August 31, 2015 stating "Comes now the Court and enters Judgment Order." (App. 13). The order that is the subject of this entry is listed as being file stamped on August 28, 2015. It is well-settled that the trial court speaks through its CCS or docket. *City of Indianapolis v. Hicks*, 932 N.E.2d 227, 233 (Ind. Ct. App. 2010), *reh'g denied*, *trans. denied.* Accordingly, we conclude that the trial court noted its entry of its final judgment in the Estate Case in the CCS on August 31, 2015.[4] Overman then had thirty days, pursuant to Appellate Rule 9(A), to file his notice of appeal, which he did not do. He did not file his notice of appeal until

---

[4] The trial court also noted a second entry of final judgment in the CCS on September 10, 2015. It stated:

> **Final Judgment entered** (Judicial Officer" Haas, Warren)
> Monetary Award
>   Status: Active; Signed Date: 08/28/2015
>   Awarded to: Stuart G. Kelly, Dds
>   Awarded against: Patrick J. Overman
>   Judgment: $49,785.84
>   RJO: Book 2015, Page 0828
>   Judgment: Book 2015, Page 0828

(App. 13-14). Overman argues that the trial court noted its entry of final judgment in the CCS for purposes of Appellate Rule 9 in this entry, rather than its August 31, 2015 entry. We disagree and find that this second entry was instead a nunc pro tunc entry that supplemented the trial court's earlier entry. A nunc pro tunc entry is defined in law "'as an entry made *now* of something which was actually previously done, to have effect as of the former date.'" *Cotton v. State*, 658 N.E.2d 898, 900 (Ind. 1995) (quoting *Perkins v. Haywood*, 31 N.E. 670, 672 (Ind. 1892)). Such an entry "may be used to either record an act or event not recorded in the court's order book or to change or supplement an entry already recorded in the order book." *Id.* Both of the trial court's entries refer to the same trial court order, which was signed August 28, 2015. The second entry merely supplements the first entry by providing additional information, including the amount of the judgment and the location of the entry in the Record of Judgments and Orders, among other notations. Because a nunc pro tunc entry still has effect "as of the former date," we conclude that the trial court entered final judgment for purposes of appeal on August 31, 2015. *See id.*

October 6, 2015. Therefore, we agree with Kelly that Overman forfeited his right to an appeal.

[9] Nevertheless, in *Adoption of O.R.*, 16 N.E.3d 965, 971 (Ind. 2014), our supreme court recently clarified that, even though a party forfeits the right to an appeal by failing to file a timely notice of appeal, we may restore that right if there are "extraordinarily compelling reasons" for why the forfeited right should be restored. There, the supreme court concluded that there were extraordinary compelling reasons because the case concerned a fundamental liberty interest protected by the United States Constitution—the traditional right of parents to establish a home and raise their children. *Id.* at 972. There was also evidence that the appellant had attempted to file a timely appeal and had requested counsel to do so but had not been appointed counsel until after the deadline for filing a timely notice of appeal had passed. *Id.*

[10] Unlike in *O.R.*, we do not find any "extraordinarily compelling reasons" to restore Overman's right to appeal. This case does not concern any protected liberty interests such as the right of parents to establish a home and raise their children. Overman merely attempts to avoid the trial court's judgment regarding a contract into which he freely entered. In addition, while Overman submitted supplemental exhibits documenting his emails to his attorney in which he requested that his attorney file a timely notice of appeal, Overman's situation is different than the appellant's situation in *O.R.* A notice of appeal provides both the court and opposing parties with notice that an appellant intends to appeal a judgment. Even though the appellant in *O.R.* did not file a

timely notice of appeal, he constructively notified the court that he intended to appeal the court's judgment by requesting the court to appoint him an attorney. Overman's attempts to notify his attorney that he wished to appeal the trial court's judgment did not serve any such constructive notice of appeal to the court in the instant case.

[11] In sum, we do not find the compelling circumstances that existed in *O.R.* also present here. Because we conclude that Overman forfeited his right to appeal the trial court's judgment and we do not find any extraordinarily compelling reasons to restore that right, we dismiss his appeal and need not address his arguments.

[12] Dismissed.

Kirsch, J., and Riley, J., concur.