## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 08 2017, 7:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark E. Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of Ka.M., Cy.M., Ks.M., & Cn.M. (Minor Children) <br><br> and <br><br> C.R. (Mother) <br> *Appellant-Respondent,* <br><br> v. <br><br> The Indiana Department of Child Services, <br> *Appellee-Petitioner.* | September 8, 2017 <br><br> Court of Appeals Case No. 11A01-1705-JT-958 <br><br> Appeal from the Clay Circuit Court <br><br> The Honorable Joseph D. Trout, Judge <br><br> Trial Court Cause Nos. 11C01-1608-JT-226 <br> 11C01-1608-JT-227 <br> 11C01-1608-JT-228 <br> 11C01-1608-JT-229 |

**Bailey, Judge.**

# Case Summary

[1] C.R. ("Mother") appeals the termination of her parental rights to Ka.M., Cy.M., Ks.M. and Cn.M. ("Children"), upon the petition of the Clay County Department of Child Services ("the DCS"). She presents the sole issue of whether fundamental error occurred in the admission of evidence. We affirm.

# Facts and Procedural History

[2] Mother and G.M. ("Father")[1] had three children when the DCS initiated an investigation into allegations that the medical needs of Cn.M. and Cy.M. were being neglected. During the investigation, the DCS received an additional report, alleging that Mother had given birth on November 24, 2014 and had tested positive for methamphetamine upon delivery. Children were taken into DCS custody. On November 26, 2014, the DCS filed a petition alleging that Children were Children in Need of Services ("CHINS") because of parental drug use, medical neglect, and lack of cooperation with investigative efforts.

[3] On January 27, 2015, Mother and Father appeared for a fact-finding hearing. They admitted that Mother had used methamphetamine during her pregnancy and Ks.M. had been born with drugs in his system. They also admitted to past methamphetamine abuse and missing necessary pediatric medical appointments. Pursuant to a dispositional decree entered on March 30, 2015,

---

[1] Father is not an active party to this appeal.

Mother was court-ordered to refrain from illicit drug use and other criminal activity, maintain appropriate housing, cooperate with service providers, maintain contact with the DCS, visit with Children, complete a substance abuse assessment, and submit to random drug screens.

[4] Mother's participation in services was inconsistent. She visited with Children frequently but also missed a significant number of visits, arrived late, or left early. She successfully completed group therapy but was non-compliant with individual therapy. She had ninety-seven negative drug screens and ten to twelve positive drug screens. According to her service providers, Mother would be very motivated and cooperative for two or three months, and then lose contact with the providers.

[5] At each review hearing, the CHINS court found Mother to be generally non-compliant with the court orders. On December 7, 2015, the DCS plan was changed to termination of parental rights. The DCS was authorized to file a parental rights termination petition; however, the petition was dismissed on June 23, 2016, upon reports that the parents were participating in services. A second parental rights termination petition was filed on September 12, 2016.

[6] An evidentiary hearing commenced on December 13, 2016, but was continued at Mother's request to February 21, 2017. On February 2, 2017, the DCS filed a motion to conduct the testimony of Forensic Fluids Laboratories toxicologist Bridget Lemberg ("Lemberg") telephonically. The motion was granted on February 15, 2017.

[7] On February 21, 2017, Mother failed to appear. The evidentiary hearing proceeded, with each parent represented by counsel. Lemberg testified that Mother had tested positive for methamphetamine on August 7, 2016. Family case manager Tris Decker ("Decker") testified that Mother was no longer receiving services related to her four oldest children, but had given birth to a fifth child and was ordered to participate in services as part of a CHINS proceeding as to that child. Decker further testified that Mother was "not at all" participating in those services. (Tr. Vol. I, pg. 173.) Children's Guardian Ad Litem ("GAL") opined that termination of parental rights was appropriate because the parents had been non-compliant, they were "obviously using [drugs]," and the "traffic" in the parental home was unsafe for Children. (Tr. Vol. I, pg. 178.)

[8] On April 6, 2017, the trial court entered its findings of fact, conclusions and order terminating Mother's parental rights. This appeal ensued.

# Discussion and Decision

[9] "The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children." *In re Adoption of O.R.*, 16 N.E.3d 965, 972 (Ind. 2014). Although parental rights are of a constitutional dimension, they are not absolute and the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005).

Indiana Code section 31-35-2-4(b)(2) sets out the elements that the DCS must allege and prove by clear and convincing evidence to terminate a parent-child relationship:

> (A) that one (1) of the following is true:
>
> (i)     The child has been removed from the parent for at least six (6) months under a dispositional decree.
> (ii)     A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
> (iii)     The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
>
> (B) that one (1) of the following is true:
>
> (i)     There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> (ii)     There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> (iii)     The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

[11] Mother does not lodge a direct challenge to the sufficiency of the evidence supporting the termination decision. Rather, she argues that the admission of some of the supporting evidence, that is, Lemberg's testimony, amounted to fundamental error that deprived her of her constitutional right to parent under the Fourteenth Amendment to the United States Constitution. First, she argues that the DCS elicited telephonic testimony from Lemberg absent compliance with administrative rule requirements for telephonic testimony. Second, she argues that Lemberg was permitted to testify to a positive drug screen result although the chain of custody was not clearly established.

[12] The fundamental error doctrine applies to egregious trial errors. *In re E.E.*, 853 N.E.2d 1037, 1043 (Ind. Ct. App. 2006), *trans. denied*. It provides a narrow exception to the waiver doctrine, applicable only to an error so egregious to fundamental due process that the trial judge should or should not have acted, regardless of a party's failure to object or preserve the issue of error for appeal. *N.C. v. Indiana Dep't of Child Servs.*, 56 N.E.3d 65, 69 (Ind. Ct. App. 2016), *trans. denied*. Reversal of the trial court's ruling based upon fundamental error requires both a clear blatant violation of basic and elementary principles and that the harm or potential for harm therefrom is substantial and appears clearly and prospectively. *Id.*

[13] Mother asserts that the trial court failed to follow the procedure outlined in Indiana Administrative Rule 14, governing "Use of Telephone and Audiovisual Telecommunication" in court proceedings and providing in relevant part:

[A] trial court may use telephone or audiovisual communication subject to:

(1) the written consent of all the parties, entered on the Chronological Case Summary; or

(2) upon a trial court's finding of good cause, upon its own motion or upon the motion of a party. . . .

(3) A party or a trial court if it is acting on its own motion must give notice of the motion to use telephone or audiovisual telecommunication as follows:

(a) Any motion for testimony to be presented by telephone or audiovisual telecommunications shall be served not less than thirty (30) days before the time specified for hearing of such testimony;

(b) Opposition to a motion for testimony to be presented by telephone or audiovisual telecommunication shall be made by written objection within seven (7) days after service;

(c) A trial court may hold an expedited hearing no later than ten (10) days before the scheduled hearing of such testimony to determine if good cause has been shown to present testimony by telephone or audiovisual telecommunication;

(d) A trial court shall make written findings of fact and conclusions of law within its order on the motion for testimony to be presented by telephone or audiovisual telecommunication[.]

[14]  The record indicates that the DCS motion for telephonic testimony was granted thirteen days after the February 2, 2017 filing of the motion.  Although Mother

did not object within seven days after service, she was entitled to notice thirty days before the February 21, 2017 hearing. Also, it appears that the trial court did not make the requisite findings and conclusions as to good cause. The DCS argues that substantial compliance was adequate. We disagree. Parental rights are of a constitutional dimension and disregard of administrative procedures is not to be condoned.

[15] That said, the telephonic evidence is of a cumulative nature. The thrust of Lemberg's testimony was that Mother had used illicit substances; specifically, she had tested positive for methamphetamine and synthetic marijuana. At the outset of the evidentiary hearing, the CHINS exhibits were admitted into evidence by stipulation and some of these reference Mother's drug screens. For example, the Notice of Removal of Child from a Trial Home Visit discloses that drug screen results of July 8, 2015 were "positive for synthetic cannabanoids." (Ex. 6.)

[16] Michael McKamey, a Lifeline home-based therapist, testified that Mother reported to him a relapse, that is, she used synthetic marijuana. Decker testified that, during her case management tenure, Mother had relapsed "a couple of times." (Tr. Vol. I, pg. 148.) She referred to a positive result for "Spice" in July of 2015 and a positive result for methamphetamine in August of 2016. (Tr. Vol. I, pgs. 145, 173.) Parenting time supervisor Amy Clark, who had background in substance abuse treatment, opined that Mother appeared to be under the influence of drugs at some visits. Given the abundance of evidence of Mother's drug use, the erroneous admission of telephonic testimony is harmless error as

opposed to reversible error or fundamental error.  *See* Indiana Trial Rule 61(B) (no error in the admission or exclusion of evidence is grounds for granting relief unless refusal to take such action appears inconsistent with substantial justice).

[17]     Mother also contends that the test results were admitted despite an improper chain of custody.  "To establish a proper chain of custody, the State must give reasonable assurances that the evidence remained in an undisturbed condition." *Troxell v. State*, 778 N.E.2d 811, 814 (Ind. 2002).  A successful challenger must "present evidence that does more than raise a mere possibility that the evidence may have been tampered with." *Id.*

[18]     Mother acknowledges that the DCS presented testimony regarding its test collection and transportation procedures, Lemberg testified regarding laboratory handling procedures, and the trial court summarized this evidence at some length.  However, she argues, "neither the trial court nor counsel for either parent addressed discrepancies in testimony as to delivery by UPS and FedEx." Appellant's Brief at 17.  Lemberg testified regarding a "UPS packet," (Tr. Vol. I, pg. 48), while Decker testified to using a "FedEx bag" and "sending FedEx bags out daily." (Tr. Vol. I, pgs. 152, 170.)  Thus, the chain-of-custody testimony was not entirely without conflict.  However, such is not required.

[19]     The DCS's testimonial evidence provided reasonable assurances that the physical evidence had been undisturbed.  Additionally, each test result document was accompanied by Lemberg's Affidavit, detailing procedures utilized and certifying the business record.  Merely pointing to conflicting

testimony as to the identification of a private delivery service does not present an issue of fundamental error. The contested evidentiary hearing in this case was not a situation where the trial court blatantly dispensed with either a chain-of-custody inquiry or the foundational requirements for the admission of telephonic testimony. Mother has not shown egregious trial error.

# Conclusion

[20] Mother did not establish that fundamental error occurred in the admission of evidence.

[21] Affirmed.

Baker, J., and Altice, J., concur.