# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 08 2019, 10:54 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Katherine N. Worman
Evansville, Indiana

ATTORNEY FOR APPELLEE

Keith M. Wallace
Evansville, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In re the Adoption of W.L.:

D.L.,
*Appellant-Respondent,*

v.

C.C.,
*Appellee-Petitioner.*

April 8, 2019

Court of Appeals Case No.
18A-AD-2671

Appeal from the Vanderburgh
Superior Court

The Honorable Brett J. Niemeier,
Judge
The Honorable Renee A.
Ferguson, Magistrate

Trial Court Cause No.
82D04-1802-AD-31

**Bradford, Judge.**

# Case Summary

[1] After D.L. ("Father") failed to engage in any significant communication with his son W.L. ("Child") for a period of more than one year, C.C. ("Stepfather") petitioned to adopt Child. Stepfather argued, and the trial court concluded, that pursuant to Indiana Code section 31-19-9-8(a)(2), Father's consent to the adoption was not required. After concluding Father's consent was not required, the trial court granted Stepfather's petition. Father argues on appeal that the trial court erred by concluding that his consent to the adoption was not required. Because we conclude otherwise, we affirm.

# Facts and Procedural History

[2] Child was born on March 4, 2011, to Father and K.C. ("Mother"). In November of 2016, Father exercised unsupervised overnight visitation with Child at paternal grandmother's home. On Thanksgiving Day, Father was at paternal grandmother's home with Child. At some point, a dispute arose between Father, paternal grandmother, and paternal stepgrandfather that resulted in Father striking paternal grandmother and paternal stepgrandfather, causing injury. Father has not visited Child since shortly after this incident.

[3] On January 10, 2017, in relation to the events that took place on Thanksgiving, Father was charged with three felonies. Father was incarcerated on these charges from January 16, 2017 to June 19, 2017. Father did not communicate with Child while incarcerated. In February of 2017, while Father was

incarcerated, Father's parenting time was modified to supervised visits at the Parenting Time Center ("PTC"). Father did not immediately seek to reinstate visitation with Child upon his release from incarceration, but rather waited until January 5, 2018, to do so. Father's visits with Child were never successfully reinstated.

[4] Father also failed to support Child. The Vanderburgh County Clerk's Office's (the "Clerk's") records detailing child support payments paid by Father indicate that Father did not make any support payments between November 8, 2016 and April 11, 2018.

[5] On February 16, 2018, Stepfather filed a verified petition for stepparent adoption of Child. In his petition, Stepfather alleged that Mother had consented to the adoption, Father's consent was not required pursuant to Indiana Code section 31-19-9-8(a)(2), and Stepfather "has been a part of [Child's] life, and [Child] looks to [him] for parental love, guidance, affection, support and care." Appellant's App. Vol. II p. 30. The trial court conducted a consent hearing at which Father testified on July 31, 2018, and September 26, 2018. At the conclusion of the hearing, the trial court concluded that Father's consent was not required pursuant to Indiana Code section 31-19-9-8(a)(2). The trial court subsequently determined that adoption by Stepfather was in Child's best interests and granted Stepfather's adoption petition.

# Discussion and Decision

[6]     Father challenges the trial court's order granting Stepfather's adoption petition.

> When reviewing adoption proceedings, we presume that the trial court's decision is correct, and the appellant bears the burden of rebutting this presumption. We generally give considerable deference to the trial court's decision in family law matters, because we recognize that the trial judge is in the best position to judge the facts, determine witness credibility, get a feel for the family dynamics, and get a sense of the parents and their relationship with their children. We will not disturb the trial court's ruling unless the evidence leads to but one conclusion and the trial judge reached an opposite conclusion. The trial court's findings and judgment will be set aside only if they are clearly erroneous. A judgment is clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment. We will neither reweigh the evidence nor assess the credibility of witnesses, and we will examine only the evidence most favorable to the trial court's decision.

*In re Adoption of O.R.*, 16 N.E.3d 965, 972–73 (Ind. 2014) (internal citations and quotations omitted).

[7]     Father claims that the trial court erred in finding that his consent to Stepfather's adoption petition was not required. Under Indiana law, consent to adoption is not required from

> [a] parent of a child in the custody of another person if for a period of at least one (1) year the parent:
> > (A) fails without justifiable cause to communicate significantly with the child when able to do so; or
> > (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

Ind. Code § 31-19-9-8(a)(2). The petitioner bears the burden of proving by clear and convincing evidence that a noncustodial parent's consent to a stepparent adoption is not required. *See In re Adoption of S.W.*, 979 N.E.2d 633, 640 (Ind. Ct. App. 2012).

# I. Significant Communication

Father argues that he did not fail, without justifiable cause, to communicate significantly with Child. We disagree. The record reveals that Father has not visited or communicated significantly with Child since November of 2016.

Father's last visit with Child occurred shortly after Thanksgiving of 2016. Father admits that he did not make any attempts to visit Child in December of 2016. Father was arrested on January 16, 2017, and remained incarcerated until June 19, 2017. Father also did not visit with Child upon his release from incarceration. The record reveals that despite his claims that he contacted the PTC on the "soonest available date that [he] could" to reinstate visitation with Child, tr. p. 24, documentation submitted by the PTC indicates that Father did not contact the PTC until January 5, 2018, approximately seven months after he was released from incarceration. Father acknowledged that he was aware of the court order requiring him to contact the PTC before he could be awarded visitation with Child. Father was also reminded of such when he went to Stepfather's residence and asked Stepfather about speaking to Mother in October of 2017.

[10] In addition, Father does not dispute that he did not communicate with Child while incarcerated but argues that his lack of communication was justified and that he had, on a few occasions, unsuccessfully attempted to communicate with Child. Specifically, Father makes the unsupported, self-serving claims that he attempted to call Child from jail and wrote letters to Child while he was incarcerated. Father acknowledges, however, that he never spoke to Child or sent the letters he claims to have written. The trial court found that Father's claims that he attempted to communicate with Child via telephone and mail were not credible, noting a lack of evidence beyond Father's self-serving testimony of any such attempts. The trial court was in the best position to make such a determination. *See Adoption of O.R.*, 16 N.E.3d at 973 (providing that the trial judge is in the best position to judge the facts and determine witness credibility). Father's arguments on appeal essentially amount to an invitation to reweigh the evidence, which we will not do. *See id.*

[11] Further, while Father acknowledges that he never communicated in person or over the phone with Child following his release from incarceration, he claims that he attempted to communicate with Child by leaving a T-Rex costume for Child at Mother's home at some point around Christmas of 2017. Mother acknowledged that Father left a costume for Child but asserted that the costume in question had been given to Child as a birthday present "for a year earlier" than 2017. Tr. p. 74. While we agree that Father's act of leaving a gift for Child evidences an attempt to communicate, we conclude that one such attempt over the course of fourteen months does not evidence significant

communication.[1] *In re Adoption of J.P.*, 713 N.E.2d 873, 876 (Ind. Ct. App. 1999) (providing that parent's "short, not-quite-monthly visits" with the child did not establish significant communication); *see also* Ind. Code § 31-19-9-8(b) ("If a parent has made only token efforts to support or to communicate with the child the court may declare the child abandoned by the parent."). The trial court's determination that Father failed to engage in significant communication with Child for a period of more than one year is not clearly erroneous.

## II. Provide Care and Support

[12] Father also argues that the trial court erred in determining that he knowingly failed to provide for Child's care and support for a period of at least one year. In support, Father points to an alleged lack of evidence indicating that he either was able or failed to pay after acquiring the ability to do so. In determining ability to pay child support, we have noted that ability to pay "cannot be adequately shown by proof of income standing alone" and that to determine ability, "it is necessary to consider the totality of the circumstances." *In re Adoption of K.F.*, 935 N.E.2d 282, 288 (Ind. Ct. App. 2010). Likewise, a parent's incarceration does not prove inability to pay. *See In re Adoption of T.L.*, 4 N.E.3d 658, 663 (Ind. 2014) (holding that incarcerated parents are not "granted a full reprieve from their child support obligations" and noting that

---

[1] Father testified that additional attempts to visit and communicate with Child following his incarceration would have been unsuccessful, but it appears the trial court did not lend much weight, if any, to this testimony.

Indiana's approach "preserves our tradition of responsibility by imposing at least a minimal level of support … without ignoring the realities of incarceration").

[13] The record demonstrates that Father failed to support Child for a period of more than one year as the Clerk's records indicate that Father did not make any child support payments between November 8, 2016 and April 11, 2018. The question then becomes whether Father's failure to pay should have been excused due to an inability to pay.

[14] Father's nonpayment began prior to both the events occurring on Thanksgiving of 2016, and Father's resulting incarceration. The record is unclear as to why Father did not make support payments in late November, December, or early January. Father provided conflicting testimony regarding his employment status and his failure to communicate with and support Child during this time. Further, while it is undisputed that Father was incarcerated for approximately six months in mid-January through mid-June of 2017, Father was not relieved of his obligation to support Child during his incarceration, and the record does not establish that Father lacked the ability to provide some minimal level of support while incarcerated.

[15] It is also undisputed that, following his release, Father eventually obtained employment and had some ability to support Child. For instance, Father acknowledged that he was employed in September of 2017 and indicated that he thought he might have made a child support payment at that time. The

record, however, does not support Father's recollection. Father also acknowledged that he had been continuously employed since January of 2018, sometimes working multiple jobs, but nonetheless failed to make child support payments until April 11. The record indicates that Father is an able-bodied individual who demonstrated the ability to obtain employment when he so desired. Thus, any periods of unemployment appear to be more a matter of choice rather than inability to obtain employment.

[16] Stepfather argues that Father's testimony during the consent hearing indicates that Father knew he was obligated to financially support Child and had at least some ability to provide support but failed to do so. We agree. Again, Father provided conflicting testimony regarding his employment status and his payment of support during periods when he claimed to be employed. The trial court determined that Father's claim that he was unable to support Child was not credible. As we stated above, the trial court was in the best position to judge Father's credibility, and we will not second guess the trial court's credibility determination. *See Adoption of O.R.*, 16 N.E.3d at 973. The trial court's credibility determination coupled with Father's conflicting testimony regarding his employment status and financial position supports the inference that Father was able to provide support for Child but knowingly failed to do so. The trial court's determination in this regard is therefore not clearly erroneous.

# Conclusion

[17]    The trial court determined that Father failed to both communicate significantly with and provide care and support for Child. Neither of these determinations is clearly erroneous as both are supported by the record.[2] As such, we conclude that the trial court did not err in determining that Father's consent to the adoption was not required pursuant to Indiana Code section 31-19-9-8(a)(2).

[18]    The judgment of the trial court is affirmed.

Crone, J., and Tavitas, J., concur.

---

[2] We acknowledge that because Indiana Code section 31-19-9-8(a)(2) is written in the disjunctive, "the existence of any one of the circumstances [contained therein] provides sufficient ground to dispense with consent." *Adoption of O.R.*, 16 N.E.3d at 973. We nevertheless review the trial court's determination that both circumstances are present in the instant matter and conclude that the trial court's determination as to both is supported by the record.