# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 21 2017, 8:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Daniel G. Foote
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputy Attorneys General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Termination of the Parent-Child Relationship of:<br><br>Ce.S. & Ch.S. (Minor Children), and<br><br>C.R.<br><br>*Appellant-Respondent,*<br><br>v.<br><br>The Indiana Department of Child Services,<br><br>*Appellee-Petitioner.* | March 21, 2017<br><br>Court of Appeals Case No. 49A02-1610-JT-2365<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Marilyn A. Moores, Judge<br><br>The Honorable Larry E. Bradley, Magistrate<br><br>Trial Court Cause No. 49D09-1512-JT-727<br>49D09-1512-JT-728 |

**Bailey, Judge.**

# Case Summary

C.R. ("Father") appeals the termination of his parental rights to Ce.S. and Ch.S. ("Children"), upon the petition of the Marion County Department of Child Services ("the DCS").[1] We affirm.

# Issues

Father presents two issues for review:

    I.      Whether he was deprived of a fundamentally fair trial; and

    II.     Whether the DCS established, by clear and convincing evidence, the requisite statutory elements to support the termination decision.

# Facts and Procedural History

On November 19, 2014, the DCS received a report that Mother had abandoned Children and fled to avoid an arrest warrant. At that time, Father was incarcerated. Children were placed in foster care.

On March 6, 2015, Mother admitted Children were children in need of services and Father waived a fact-finding hearing. In a dispositional order of April 10,

---

[1] Children's mother ("Mother") consented to termination of her parental rights. She is not an active party on appeal.

2015, Father was ordered to contact the DCS within 72 hours of his release from incarceration.

[5] On December 2, 2015, the DCS petitioned to terminate Father's parental rights. On September 21, 2016, the trial court conducted an evidentiary hearing on the termination petition. Mother appeared personally and by counsel, and consented to termination of her parental rights. Father appeared telephonically and by counsel. He testified that his earliest possible release date was in 2024, but that he was completing programs with the hope of time cuts. On September 27, 2016, the trial court entered its findings of fact, conclusions and order terminating Father's parental rights. This appeal ensued.

# Discussion and Decision

## Fundamental Fairness

[6] Father claims that his parental rights were terminated in proceedings that were fundamentally unfair. More specifically, Father argues that the trial court should have sua sponte afforded him additional time to present witnesses, or his counsel should have requested this, after the following exchange took place during the evidentiary hearing:

> Father: Okay, is – how would I be able to go around calling State witnesses?
>
> Father's Counsel: Okay, they're being called right now. There's gonna be another State witness called right now, and so it'll just continue as we have been.

Father: Okay, because I wanna – how would I call, how, how would I go about getting', my, like, State witnesses for me, witnesses for me –

Father's Counsel: If you have any there who are willing to talk, then you would just need to communicate with them to come in and sit with you in the room, and then you could let me know, about that, and we could call them.

Father: Okay, could, is there any way that we can, maybe do a – a continuance?

Father's Counsel: No.

Father: So I can?

Father's Counsel: No.

Father: I thought I was – I thought I was allowed a continuance.

Father's Counsel: No. There's always [sic] been a motion for a continuance that's been denied in this case. Okay, now the room is full, [Father], so, you know, everybody's hearing our conversation, so – we're gonna go forward now, with the case.

(Tr. at 32-33.) According to Father "once it became apparent that Father wished to consult with his counsel and was plainly uncertain as to whether or how he could go about calling witnesses, the trial should have been continued – or at the very least bifurcated – so that Father could call witnesses at another session in the near future." Appellant's Br. at 2-21.

[7] The decision to grant or deny a motion for a continuance is within the discretion of the trial court. *Rowlett v. Office of Family & Children*, 841 N.E.2d 615, 619 (Ind. Ct. App. 2006). An abuse of discretion may be found in the denial of a motion for a continuance when the movant has shown good cause for granting the motion. *Id.* Here, however, Father simply did not move for a continuance. He cites no authority for the proposition that the trial court had a sua sponte duty to bifurcate the proceedings. Moreover, he has not identified any witness that he would have called given a continuance. Father has demonstrated no abuse of discretion.

[8] Father also argues that his counsel should have more thoroughly consulted with him regarding potential witnesses and thus ascertained the need for a continuance. The applicable standard of review for alleged underperformance of counsel in termination proceedings was set forth by our Indiana Supreme Court in *Baker v. County Office of Family & Children*, 810 N.E.2d 1035, 1041 (Ind. 2004):

> Where parents whose rights were terminated upon trial claim on appeal that their lawyer underperformed, we deem the focus of the inquiry to be whether it appears that the parents received a fundamentally fair trial whose facts demonstrate an accurate determination. The question is not whether the lawyer might have objected to this or that, but whether the lawyer's overall performance was so defective that the appellate court cannot say with confidence that the conditions leading to the removal of the children from parental care are unlikely to be remedied and that termination is in the child's best interest.

[9] The DCS presented multiple witnesses and Father also testified. His counsel elicited testimony of Father's efforts to better himself while in prison, cross-examined DCS witnesses, and lodged appropriate objections. On appeal, Father does not identify an omitted witness or explain what anticipated testimony might have been forthcoming from them. Thus, his bald assertion of poor performance has no relevance to the quantum of evidence from which the trial court was to evaluate the probability of change and Children's best interests. He has not shown that he was deprived of a fundamentally fair trial.

## Standard of Review – Sufficiency of the Evidence

[10] The State is required to prove that termination is appropriate by a showing of clear and convincing evidence, a higher burden than establishing a mere preponderance. *In re V.A.*, 51 N.E.3d 1140, 1144 (Ind. 2016). When we review whether the termination of parental rights is appropriate, we will not reweigh the evidence or judge witness credibility. *Id.* at 1143. We will consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* In so doing, we give "due regard" to the trial court's unique opportunity to judge the credibility of the witnesses. *In re I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010). When the trial court has entered findings of fact and conclusions thereon, we apply a two-tiered standard of review; first, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id.*

The judgment will be set aside only if it is found to be clearly erroneous. *In re R.S.*, 56 N.E.3d 625, 628 (Ind. 2016). However, the reviewing court may also consider the statutory requirement that in a proceeding to terminate parental rights, the findings must be supported by clear and convincing evidence. *Id.* Thus, we review the judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment. *Id.* Termination of parental rights is a "last resort" to be implemented when all other reasonable efforts have failed. *Id.* at 631.

## Requirements for Involuntary Termination of Parental Rights

"The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children." *In re Adoption of O.R.*, 16 N.E.3d 965, 972 (Ind. 2014). Although parental rights are of a constitutional dimension, they are not absolute and the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. *Bester v, Lake Co. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005).

Indiana Code section 31-35-2-4(b)(2) sets out the elements that the DCS must allege and prove by clear and convincing evidence to terminate a parent-child relationship:

> (A) that one (1) of the following is true:
>
> (i)    The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

## Analysis

[14] Father contends that insufficient evidence supports the termination decision. He concedes that Children have been removed for the requisite time-period. He does not specifically challenge the proof as to the element of a satisfactory plan or whether there is clear and convincing evidence of a reasonable probability

that he would fail to remedy the conditions that led to Children's removal or a threat to Children from continuation of the parent-child relationship. Father focuses upon whether the DCS established by clear and convincing evidence that termination is in Children's best interests.

[15] The State must prove each element by clear and convincing evidence; accordingly, if the State fails to prove any one of the four statutory elements, then it is not entitled to a judgment terminating parental rights. *In re R.S.*, 6 N.E.3d at 629. Where the findings do not support the conclusion that termination is in a child's best interests, the reviewing court need not reach the issue of whether other elements were satisfied. *See id.*

[16] In determining what is in a child's best interests, the court must look to the totality of the evidence. *In re A.D.S.*, 987 N.E.2d 1150, 1158 (Ind. Ct. App. 2013), *trans. denied*. In this regard, the trial court made several factual findings: Father was incarcerated on Burglary and Neglect of a Dependent convictions, with an anticipated release date of September 11, 2014; he had a prior criminal history; he had not ever seen his son and had last seen his daughter when she was seven months old; Father had made, at most, one effort to communicate with Children during his incarceration; Children were bonded with their foster parents in a pre-adoptive home; and the foster parents involved Children in continuing therapy and implemented the therapy recommendations at home. These factual findings were supported by testimony from caseworkers, Children's foster mother, and the Guardian Ad Litem, unanimously opining

that Children had thrived in foster care and were bonded to their foster parents as opposed to Father.

[17] Indeed, Father's own testimony supported the trial court's findings of fact as to his inability to care for Children. He stated that his "current" earliest possible release date was in 2024, although he hoped for time cuts totaling four years and four months. (Tr. at 75.) Father admitted that he had not contacted the DCS in thirteen months and had engaged in only one telephone call with his daughter. Father conceded that he was unable to care for Children but requested that they be placed with his parents. However, a prior placement with the paternal grandparents had failed after one day. The DCS showed, by clear and convincing evidence, that termination of Father's parental rights was in Children's best interests.

# Conclusion

[18] Father was not deprived of a fundamentally fair trial. The DCS presented sufficient evidence to support the termination decision.

[19] Affirmed.

Vaidik, C.J., and Robb, J., concur.