## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 16 2018, 9:58 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Amy P. Payne
Monroe County Public Defender
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Larry D. Allen
Robert J. Henke
Deputies Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Termination of the Parent-Child Relationship of D.P., K.P., and M.P. (Minor Children),

  and

J.P. (Mother),

*Appellant-Respondent,*

  v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

April 16, 2018

Court of Appeals Case No.
53A01-1709-JT-2144

Appeal from the Monroe Circuit Court

The Honorable Kelsey B. Hanlon, Special Judge

Trial Court Cause Nos.
53C07-1605-JT-318
53C07-1605-JT-319
53C07-1605-JT-320

**Bailey, Judge.**

# Case Summary

[1] J.P. ("Mother") appeals the termination of her parental rights to D.P., K.P., and M.P. ("the Children"), upon the petition of the Monroe County Department of Child Services ("the DCS"). Mother presents the sole issue of whether the DCS established, by clear and convincing evidence, the requisite statutory elements to support the termination decision. We affirm.

# Facts and Procedural History

[2] Mother gave birth to three children, in 2000, 2002, and 2008.[1] The eldest child, D.P., has spina bifida and uses a wheelchair. The DCS became involved with the family after school personnel reported that D.P.'s catheter was not properly drained and he was sitting in a stained, urine-soaked chair, and Mother's boyfriend called 9-1-1 to report that Mother was suicidal. On May 15, 2015, Mother received a drug screen and tested positive for THC, the active ingredient in marijuana. On May 27, 2015, she tested positive for methamphetamine. At that time, the Children were removed from Mother's care. They were placed in the home of Mother's parents ("Grandparents").

---

[1] Their father, Mother's former husband, is not an active party to this appeal.

[3] On July 13, 2015, the Children were found to be Children in Need of Services ("CHINS"). Mother admitted the allegations that the Children were CHINS due to medical neglect and Mother's drug use. She was ordered to participate in various services, including substance abuse assessment, drug screening, and individual therapy. She was also ordered to maintain an appropriate home and permit service providers to visit the home.

[4] Mother was evaluated by a therapist and diagnosed with cannabis use disorder and an unspecified personality disorder with antisocial traits. Her subsequent participation in services was sporadic. She attended some therapy sessions and, on a few occasions, met with a caseworker and home-based services provider. However, Mother was unwilling to provide a full substance-abuse history and did not facilitate any home visit. Her services were suspended due to lack of compliance, and she did not visit with any of the Children.[2] The DCS scheduled 59 drug screens for Mother. She failed to show up for 11 screens and had positive results for 44 of the 48 drug screens administered; 4 were negative. Primarily, Mother tested positive for THC, but she repeatedly expressed an unwillingness to forgo marijuana use.

[5] On May 17, 2016, the DCS petitioned for termination of Mother's parental rights. A fact-finding hearing was conducted on April 25, 2017 and May 23,

---

[2] At the request of the eldest two children, the CHINS court entered an order that no visitation between Mother and her eldest children take place. However, Mother was not prohibited from visitation with the youngest child, who expressed a desire to see Mother. Mother was informed that her visitation rights as to her youngest child were not suspended, but she never affirmatively requested visitation.

2017. On August 2, 2017, the trial court entered an order terminating Mother's parental rights. Mother now appeals.

# Discussion and Decision

## Standard of Review – Sufficiency of the Evidence

[6] When we review whether the termination of parental rights is appropriate, we will not reweigh the evidence or judge witness credibility. *In re V.A.*, 51 N.E.3d 1140, 1143 (Ind. 2016). We will consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* In so doing, we give "due regard" to the trial court's unique opportunity to judge the credibility of the witnesses. *In re I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010). We will set aside the trial court's judgment only if it is clearly erroneous. *K.T.K. v. Ind. Dep't of Child Servs*, 989 N.E.2d 1225, 1229 (Ind. 2013). In order to determine whether a judgment terminating parental rights is clearly erroneous, we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment. *I.A.*, 934 N.E.2d at 1132.

## Requirements for Involuntary Termination of Parental Rights

[7] "The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children." *In re Adoption of O.R.*, 16 N.E.3d 965, 972 (Ind. 2014). Although parental rights are of a constitutional dimension, the law provides for the termination of those

rights when the parents are unable or unwilling to meet their parental responsibilities. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). The State is required to prove that termination is appropriate by a showing of clear and convincing evidence, a higher burden than establishing a mere preponderance. *In re V.A.*, 51 N.E.3d at 1144.

[8] Indiana Code Section 31-35-2-4(b)(2) sets out the elements that the DCS must allege and prove by clear and convincing evidence in order to terminate a parent-child relationship:

> (A) that one (1) of the following is true:
>
> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
> (iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
>
> (B) that one (1) of the following is true:
>
> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of

the child.
(iii)    The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

[9] Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, and therefore the court need only find that one of the three requirements of subsection (b)(2)(B) was established by clear and convincing evidence. *See In re L.S.*, 717 N.E.2d 204, 209 (Ind. Ct. App. 1999).

## Analysis

[10] Mother contends that insufficient evidence supports the termination decision. She concedes that the Children have been removed for the requisite time period and she does not specifically challenge the proof as to the element of a satisfactory plan. She focuses upon whether there is clear and convincing evidence of a reasonable probability that she would fail to remedy the conditions that led to the Children's removal or that continuation of the parent-child relationships poses a threat to the Children's well-being. She also focuses upon whether the DCS established by clear and convincing evidence that termination is in the Children's best interests.

[11] <u>Remedying Conditions</u>. Mother argues "it was clear error for the trial court to enter a judgment of termination against Mother when it was made clear that

Mother was working to rectify the issues that resulted in removal of children from the parental home in the first place." Appellant's Brief at 14. According to Mother, the trial court's factual findings as to her non-compliance and inconsistent cooperation with services are clearly erroneous. Mother asserts that she "reasonably complied" in light of her unfamiliarity with the legal process and "the gravity of her personal situation." Appellant's Brief at 14. At the termination hearing, Mother had admitted to failing to maintain contact with the DCS and her attorney, failing to complete therapy, failing almost all her drug screens, and not arranging visitation or a home inspection. She conceded that she was not informed as to the Children's educational progress or medical procedures. However, she explained that she had gone through an eviction, was depressed by her sons' rejection of visitation, and sometimes felt that her efforts were futile.

[12] In determining whether the conditions resulting in the children's removal will not likely be remedied, a "two-step analysis" is employed. *In re E.M.*, 4 N.E.3d 636, 642-43 (Ind. 2014). First, we identify the conditions that led to removal; and second, we must determine whether there is a reasonable probability that those conditions will not be remedied. *Id* at 643. In the second step, the trial court must judge parental fitness as of the time of the termination hearing, taking into consideration the evidence of changed conditions. *Id.* (citing *Bester*, 839 N.E.2d at 152). The trial court is entrusted with balancing a parent's recent improvements against habitual patterns of conduct. *Id.* The trial court has discretion to weigh a parent's prior history more heavily than efforts made only

shortly before termination. *Id.* "Requiring trial courts to give due regard to changed conditions does not preclude them from finding that parents' past behavior is the best predictor of their future behavior." *Id.*

[13] Here, the Children were removed because of medical neglect and Mother's drug use. In this regard, the trial court made several factual findings: Mother intermittently participated in therapeutic services; she was inconsistent with participation and sometimes not candid with her providers; one lapse of services extended to six months; Mother took limited accountability for her situation; Mother failed most drug screens administered to her; Mother stated to multiple persons that she did not intend to stop using marijuana; Mother had a pattern of failing to meet D.P.'s medical needs; Riley Children's Hospital personnel were unable to reach Mother during D.P.'s admission; and Mother had not made meaningful progress toward enhancing her parental abilities.

[14] The findings have evidentiary support. Family Case Manager Amanda Grossi ("FCM Grossi") testified that Mother did not maintain contact with DCS – it became "kind of hit and miss." (Tr. at 141.) FCM Grossi also testified regarding Mother's attitude toward marijuana use and her opposition to services. Although Mother cooperated with the administration of numerous drug screens, she failed most of them and expressed the opinion that she did not need services to be successful. Mother also asserted that marijuana was legal in some other states and opined that the DCS should offer her a reward for ceasing marijuana use. At times, Mother self-reported that she had ceased using marijuana, in contradiction to the drug screen results.

[15] Court Appointed Special Advocate Angie Raymond ("the CASA") testified that Mother initially refused to engage with her while reportedly "trying to get her life stabilized." (Tr. at 179.) Mother later engaged with the CASA, but "consistently stated she was not willing to consider herself as someone who is dependent on substances and she was not going to engage in removing her use of marijuana from her life." (Tr. at 180.) The CASA explained that visitation had been arranged for Mother and her youngest child, but Mother failed to show up for the first visit, and then failed to confirm a second visit. According to the CASA, the child was very upset and the CASA would no longer recommend visitation. Mother's home-based case worker testified that she was unable to gain access to Mother's home and Mother's services were terminated for non-compliance, specifically: "I was unable to get her to return contact [sic] for appointments and to show for appointments that were scheduled." (Tr. at 51.) Similarly, Mother's therapist testified that Mother had stopped attending sessions and he had attempted to reach her to reinstate services, without success.

[16] In sum, the DCS presented evidence that Mother did not perceive that she had a substance abuse problem and did not complete any of the services offered to her. Mother insists that she "truly worked to remedy the conditions of her family situation" but the trial court "failed to fully appreciate" her efforts. Appellant's Brief at 23. In essence, Mother is asking that we reweigh the evidence and accord greater weight to her testimony of employment, current housing stability, and future aspirations. We will not do so. *In re V.A.*, 51

N.E.3d at 1143. The DCS presented clear and convincing evidence from which the trial court could conclude that there is a reasonable probability that the conditions that led to the Children's removal will not be remedied.[3]

[17] Best Interests. Mother also contends that the DCS did not present clear and convincing evidence that termination is in the Children's best interests. In determining what is in a child's best interests, the court must look to the totality of the evidence. *In re A.D.S.*, 987 N.E.2d 1150, 1158 (Ind. Ct. App. 2013), *trans. denied*. Here, there is evidence that the Children have progressed in Grandparents' care, where they receive appropriate educational instruction and medical care. Grandparents have expressed a willingness to adopt the Children and the Children have expressed a desire to be adopted by Grandparents. Meanwhile, Mother has not availed herself of services so as to maintain relationships with the Children and make meaningful progress in remedying the conditions that led to removal. The GAL and FCM Grossi recommended termination of Mother's parental rights.

[18] We have previously held that recommendations by the case manager and CASA to terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that termination is in the child's best interests. *Id.* at 1158-

---

[3] Because one of the three requirements of Indiana Code Section 31-35-2-4(b)(2)(B) has been met, we need not address Mother's argument that continuation of the parent-child relationships does not pose a threat to the Children.

59.  Here, the DCS showed, by clear and convincing evidence, that termination of Mother's parental rights was in the Children's best interests.

# Conclusion

[19]     The DCS established by clear and convincing evidence the requisite elements to support the termination of parental rights.

[20]     Affirmed.


Crone, J., and Brown, J., concur.