# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jul 15 2019, 7:05 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Megan E. Shipley
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Frances H. Barrow
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of J.S. and Jo.C. (Minor Children)

and

J.C. (Father),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

July 15, 2019

Court of Appeals Case No.
19A-JT-258

Appeal from the Marion Superior Court

The Honorable Marilyn A. Moores, Judge

The Honorable Scott B. Stowers, Magistrate

Trial Court Cause Nos.
49D09-1805-JT-588
49D09-1805-JT-589

**Bailey, Judge.**

# Case Summary

[1] J.S. and Jo.C. ("Children"), born to J.C. ("Father") and B.S. ("Mother") (collectively, "Parents"), were adjudicated Children in Need of Services ("CHINS") because of Father's domestic violence toward Mother. The Marion County Department of Child Services ("the DCS") petitioned to terminate Parents' parental rights; the trial court denied the petition as to Mother and granted the petition as to Father.[1] Father now appeals. He presents a consolidated and restated issue: whether the order must be reversed due to deprivation of procedural due process and substantive clear error. We reverse.

# Facts and Procedural History

[2] Children were removed from Parents' custody on September 23, 2015, after Father struck and choked Mother. Children were adjudicated CHINS on December 11, 2015, and Parents were ordered to participate in various services. Over time, Mother was substantially compliant with services and Father was substantially non-compliant. In 2017, after Parents separated, Father reached into Mother's vehicle and struck her in her face. Mother cooperated with a criminal prosecution of Father and he pled guilty to battery. He was subsequently convicted of three counts of Invasion of Privacy for violating no-contact and protective orders issued for Mother's benefit.

---

[1] Mother is not an active party in this appeal.

[3] On May 15, 2018, the DCS petitioned to terminate Parents' parental rights. At a pretrial conference held on July 23, 2018, attorneys for the DCS, Mother, and Father agreed to a hearing setting of December 12, 2018 and January 3, 2019 (each half days). On October 17, 2018, the DCS filed a Motion to Advance Trial Date (to November 11, 2018 or earlier), to comply with Indiana Code Section 31-35-2-6(a)(2), which requires that a termination hearing be completed within 180 days after the termination petition is filed. On October 30, 2018, the trial court denied the Motion to Advance Trial Date, noting "the parties acquiesced to these trial dates." (App. Vol. II, pg. 68.)

[4] On November 20, 2018, Father moved to dismiss the DCS petition, on grounds of statutory noncompliance. The motion was denied. On December 12, 2018 and January 3, 2019, the trial court conducted an evidentiary hearing. Mother testified that she had obtained employment, participated in visitation, and cooperated with law enforcement and a domestic violence advocate to address Father's acts of physical violence and property destruction. She had completed two therapeutic courses for victims of domestic violence. Father testified that he had not participated in services as ordered but he suggested that his placement in work release hindered his completion. The Guardian ad Litem ("GAL") and a DCS caseworker, concerned that the removal had been lengthy and Children needed stability, recommended termination of the parental rights of both parents.

On January 24, 2019, the trial court issued an order terminating the relationship between Father and Children and denying the termination petition as to Mother. In part, the court concluded:

> Due to the progress made by [Mother], the court cannot find by clear and convincing evidence at this time that the conditions that resulted in removal and continued placement outside of the home will not be remedied by Mother.

> There is a reasonable probability that the conditions that resulted in the children's removal and continued placement outside of the home will not be remedied by their father.

> Continuation of the parent-child relationship between [Father] and the children poses a threat to the children's well-being in that it would serve as a barrier for them obtaining permanency when their father is unwilling or unable to offer permanency and [to] parent.

(Appealed Order at 4.) Father now appeals.

# Discussion and Decision

## Timeliness of TPR Hearing

As an initial matter, Father argues that he was entitled to dismissal of the DCS petition for termination because of non-compliance with Indiana Code Section 31-35-2-6, which provides in relevant part:

> (a) Whenever a hearing is requested under this chapter, the court shall:

(1) Commence a hearing on the petition not more than ninety (90) days after a petition is filed under this chapter; and

(2) Complete a hearing on the petition not more than one hundred eighty (180) days after a petition is filed under this chapter.

(b) If a hearing is not held within the time set forth in subsection (a), upon filing a motion with the court by a party, the court shall dismiss the petition to terminate the parent-child relationship without prejudice.

[7]     The foregoing statute provides a "specific enforcement mechanism" for noncompliance with the timelines. *Matter of N.C.*, 83 N.E.3d 1265, 1268 (Ind. Ct. App. 2017). Although Father filed a motion to obtain dismissal, the trial court denied the motion because all parties had agreed to a hearing setting later than November 11, 2018. On appeal, the parties dispute whether the 180-day timeline is a fixed deadline or is subject to waiver. "The interpretation of a statute is a question of law, which this Court reviews de novo." *Id.* at 1267. The "primary goal is to determine and effectuate the legislative intent" and this Court will "give words and phrases their plain and ordinary meaning." *Id.*

[8]     In *Matter of N.C.*, a father whose parental rights had been terminated argued on appeal that he was entitled to dismissal of the termination petition, notwithstanding his failure to file a written motion to dismiss and his agreement to a hearing setting outside the statutory timeline. A panel of this Court concluded that the father could be afforded no relief on appeal, as he had failed

to challenge the setting of the hearing. 83 N.E.3d at 1267. Nor could the DCS be afforded the declaratory relief it sought. *Id.* at 1268.

[9] Notwithstanding waiver on the father's part, the DCS had "ask[ed] that we determine whether the word 'shall,' preceding 'dismiss' in subsection (b) of Indiana Code Section 31-35-2-6, is 'directory' or 'mandatory.'" *Id.* We declined to review an issue not properly preserved for review, explaining: "disposition of this case does not rest upon whether the word 'shall' in Indiana Code Section 31-35-2-6 is mandatory or directory." *Id.* at 1268.

[10] In so doing, we acknowledged that *Parmeter v. Cass Cty. Dep't of Child Servs.*, 878 N.E.2d 444 (Ind. Ct. App. 2007) [now superseded by statute] had construed "shall" in a CHINS statute to be "directory" and we observed that *Parmeter* involved a separate, although interlocking, statutory scheme. *See Matter of N.C.*, 83 N.E.3d at 1268. The *N.C.* Court further observed:

> The objective of CHINS statutes is assisting in the fulfillment of parental obligations, *see Parmeter*, 878 N.E.2d at 448, while termination statutes provide a framework for ending those parental obligations. Finally, and critically, the statutes examined in *Parmeter* did not include a specific enforcement mechanism for non-compliance, as does subsection (b) of Indiana Code Section 31-35-2-6.

> The DCS acknowledges the enactment of subsection (b), but points out that dismissal is to be 'without prejudice,' and thus many dismissed cases are likely to be re-filed. The DCS asserts that this would 'be simply a waste of resources, time, and effort – resulting in absurdity, hardship, or injustice and public inconvenience.' Appellee's Brief at 16. It is not within the

province of this Court to construe a statute simply to avoid repetition of filings. We defer to our Legislature, the entity best suited to balancing competing interests and allocating limited judicial resources while giving due regard to parental rights, which are of constitutional dimension.

*Matter of N.C.*, 83 N.E.3d at 1268.

[11] The circumstances here do not fit squarely within the guidance of *Matter of N.C.* There, the father first challenged the untimely hearing date by making an oral motion for dismissal at the outset of the hearing. *See id.* at 1267. Here, there was neither sustained acquiescence nor the failure to file a written motion. The DCS filed a written motion to advance the hearing date and Father did not object to the requested advancement. After the trial court denied the DCS motion, but before the termination hearing was conducted, Father filed a written motion to dismiss.

[12] Father argues that he did not waive – and indeed could not have waived – his right to a timely hearing. He asks that we look beyond *Matter of N.C.* and consider recent decisions of this Court examining deadlines in CHINS statutes and finding them to be mandatory. *See e.g., In Matter of J.R.*, 98 N.E.3d 652 (Ind. Ct. App. 2018); *In re T.T.*, 110 N.E.3d 441 (Ind. Ct. App. 2018). The DCS responds that *Matter of N.C.* is controlling, Father waived his right to a hearing within 180 days and, regardless of mandatory CHINS deadlines, there are "different interests at stake in CHINS and termination proceedings." Appellee's Brief at 17. According to the DCS:

> The focus of making quick determinations in CHINS cases to avoid unnecessary or prolonged state intervention is not the same as in a termination case. When DCS files a termination case, this generally arises from an ongoing underlying CHINS case. Because state intervention is ongoing in the underlying CHINS case when DCS files the termination case, the same impetus to resolve quickly a termination case is not the same.

*Id.* at 18. Although CHINS and termination proceedings invoke separate statutes, they are interlocking. *Matter of N.C.*, 83 N.E.3d at 1268. These statutory schemes share common goals of promoting the best interests of the children and precluding unwarranted state intrusion into the family realm. As such, our Legislature has chosen to fix deadlines for hearings in both types of proceedings. I.C. §§ 31-34-11-1, 31-35-2-6. And – post *Parmeter*, the opinion discussed in *Matter of N.C.* – the Legislature has enacted a specific enforcement mechanism for non-compliance with CHINS deadlines.

[13]   In *Matter of J.R.*, the parents argued that "the juvenile court lacked authority to enter a CHINS finding due to the failure to complete factfinding within sixty days" as mandated by Indiana Code Section 31-34-11-1, and this Court agreed. 98 N.E.3d at 654. The Court observed that, after *Parmeter* was decided, an ambiguity identified by *Parmeter* was cured with the legislative addition of an adverse consequence – dismissal – for failing to complete a factfinding hearing within sixty days. *Id.* at 655. Concluding that the addition of the dismissal subsection made clear that the timeframe was mandatory, we stated: "there is no longer any reason to believe that the General Assembly intends [the statute] to mean anything other than what its clear language indicates, i.e., that a

factfinding hearing *shall* be completed within" the statutorily-mandated timeframe and failure to do so "is grounds for dismissal." *Id.* (emphasis in original). The Court also observed that "if we were to allow the deadline to be ignored here, trial courts could habitually set these matters outside the time frame and there would be no consequence whatsoever." *Id.*

[14] Subsequently, in *Matter of T.T.*, a panel of this Court considered and rejected the DCS's arguments that Indiana Code Section 31-34-11-1 had not created "a hard and fast deadline" and that a parent had waived her objection by agreeing to a continuance:

> Contrary to DCS's argument, we believe that the General Assembly clearly intends for the timeframe set forth in Indiana Code section 31-34-11-1 to be a certain deadline. Further, while subsection (a) provides that the parties may waive the initial 60-day deadline by agreeing to a continuance, subsection (b) does not include any such provision. This lack of allowance for an additional extension of time indicates that the General Assembly intends to require that a factfinding hearing must be completed within 120 days of the filing of a CHINS petition regardless of any act or agreements of the parties. To allow the parties to agree to dates beyond the maximum 120-day limit would thwart the legislative purpose of timely rehabilitation and reunification of families that are subject to CHINS proceedings.

110 N.E.3d at 443.[2] Again, in *In re M.S.*, No. 18A-JC-2843, 2019 WL 2121505 (Ind. Ct. App. May 1, 2019), we held that the Legislature intended a fact-

---

[2] We acknowledge that a panel of this Court stated in a footnote that "CHINS courts are restricted in the ability to continue fact-finding hearings" but also observed "it was within the trial court's authority, as

finding hearing be conducted within 120 days of the filing of a CHINS petition regardless of an act or agreement of the parties. More recently, we considered a post-adjudication motion to dismiss a CHINS petition and concluded that the timeliness requirement of Indiana Code Section 31-34-11-1 is not a mechanism to collaterally attack a CHINS adjudication. *Matter of J.S.*, 18A-JC-2816, 2019 WL 2508635, slip op. at 8 (Ind. Ct. App. June 18, 2019). A deadline, although mandatory, does not provide a substitute for an appeal. *See id.*

[15]     In sum, it is apparent that our Legislature intended that courts bring prompt resolution to all matters where the state has assumed a parens patriae role and stepped into the shoes of parents. The interlocking CHINS and termination statutory schemes provide mandatory deadlines and include enforcement mechanisms. This is not to say that the enforcement mechanisms are self-executing and a party can stand idly by until an adverse determination has been made. A party must preserve the right of expediency by filing a written motion to dismiss before the merits of a petition are litigated. We need not decide whether waiver can never under any circumstances be found. Here, both the DCS and Father abandoned any acquiescence. The DCS asked for a hearing setting within statutory parameters and Father filed a motion to dismiss. Dismissal, even if re-filing was imminent, would have been warranted.

---

explained in this opinion, to continue the fact-finding hearing so that it could consider Father's request for custody modification along with the fact finding." *M.M. v. Indiana Dep't. of Child Servs.*, 118 N.E.3d 70, 77 n.2 (Ind. Ct. App. 2019). The language of Indiana Code Section 31-34-11-1 permits a continuance of a fact-finding hearing beyond 60 days, with the consent of all parties. The statute does not incorporate an exception to the 120-day requirement and a juvenile court is not vested with discretion in that regard.

Moreover, for reasons discussed below, the order terminating Father's parental rights is clearly erroneous.

## Standard of Review – Termination of Parental Rights

When we review whether the termination of parental rights is appropriate, we will not reweigh the evidence or judge witness credibility. *In re V.A.*, 51 N.E.3d 1140, 1143 (Ind. 2016). We will consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* In so doing, we give "due regard" to the trial court's unique opportunity to judge the credibility of the witnesses. *In re I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010) (citing Indiana Trial Rule 52(A)). We will set aside the trial court's judgment only if it is clearly erroneous. *K.T.K. v. Indiana Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013). In order to determine whether a judgment terminating parental rights is clearly erroneous, we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment. *I.A.*, 934 N.E.2d at 1132.

## Requirements for Involuntary Termination of Parental Rights

"The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children." *In re Adoption of O.R.*, 16 N.E.3d 965, 972 (Ind. 2014). Although parental rights are of a constitutional dimension, the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental

responsibilities. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). The State is required to prove that termination is appropriate by a showing of clear and convincing evidence, a higher burden than establishing a mere preponderance. *In re V.A.*, 51 N.E.3d at 1144.

[18] Indiana Code section 31-35-2-4(b)(2) sets out the elements that the DCS must allege and prove by clear and convincing evidence to terminate a parent-child relationship:

> (A) that one (1) of the following is true:
>
> (i)     The child has been removed from the parent for at least six (6) months under a dispositional decree.
> (ii)    A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
> (iii)   The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
>
> (B) that one (1) of the following is true:
>
> (i)     There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> (ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii)    The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

[19]    Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, and therefore the court need only to find that one of the three requirements of subsection (b)(2)(B) was established by clear and convincing evidence.  *See In re L.S.*, 717 N.E.2d 204, 209 (Ind. Ct. App. 1999).

# Analysis

[20]    The trial court entered findings regarding Father's conduct and circumstances, including the following:

John Mangano of Families First provided Domestic Violence counseling to [Father] from June 2017 to July or August 2017.

Mr. Mangano ran a twenty-six week "Batterers Intervention Group" which met once per week for two hours per week.

After attending for three weeks, [Father] stopped coming and Mr. Mangano unsuccessfully discharged [him] due to lack of attendance.

Adrian Fields of Seeds of Life facilitated parenting time between the children and their parents from February 2015 to July 2018.

Ms. Fields only supervised one session with [Father] and that was during a birthday party.

[Father] admitted to choking and hitting [Mother] in 2014 which was the catalyst for the CHINS matter.

The FCM made multiple referrals for [Father] to receive Domestic Violence Counseling and Father Engagement. Nevertheless, [Father] still has not completed these services.

[Father] has not consistently exercised parenting time for the duration of the CHINS case and hasn't seen the children since [J.C.]'s third birthday party in April 2018.

[Father] does not have stable housing and is currently in a work release program.

In July 2017, [Father] pled guilty to battery on [Mother].

Mr. [Simon] Gelaye discharged [Father] unsuccessfully from Father Engagement when [Father] stopped contacting Mr. Gelaye.

Mr. Gelaye also discharged [Father] from Supervised Parenting time due to excessive no shows and cancellations.

(Appealed Order at 2 – 4.)

[21] Father does not challenge any of the trial court's factual findings as to him. Rather, he focuses upon the trial court's conclusions and asserts that they do not support the termination decision. First, Father directs our attention to the statutory language requiring clear and convincing evidence of a reasonable

probability that the conditions leading to removal will not be remedied. He observes that the statutory language focuses upon the conditions and not upon which parent engaged in remedial efforts. Second, he challenges the conclusion that continuation of his relationship with Children poses a threat, specifically, a barrier to permanence. He observes that the DCS plan of permanence – adoption – was not put in place by the order on appeal. That is, Mother retained her parental rights and Children are not eligible for adoption by their foster parents. Finally, Father challenges the conclusion as to best interests of Children, arguing that they are left in a more precarious position by the bifurcated order because they are now deprived of a source of parental support and Mother is left to shoulder the entire financial burden.

[22] Appellate review related to the "conditions leading to removal" prong invokes a "two-step analysis." *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014). First, we identify the conditions that led to removal; and second, we must determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* In the second step, the trial court must judge parental fitness as of the time of the termination hearing, taking into consideration the evidence of changed conditions. *Id.* (citing *Bester*, 839 N.E.2d at 152). The trial court is entrusted with balancing a parent's recent improvements against habitual patterns of conduct. *Id.* The trial court has discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination. *Id.* "Requiring trial courts to give due regard to changed conditions does not

preclude them from finding that parents' past behavior is the best predictor of their future behavior." *Id.*

[23] Here, it is undisputed that the condition leading to Children's removal was domestic violence. This circumstance was no longer a reason for continued DCS placement because Mother had cooperated with services, criminally prosecuted Father, and obtained a protective order and no-contact order. It is apparent that Father engaged in no more than token efforts toward compliance with services. That said, the statutory language focuses upon whether conditions will likely be remedied and does not require proof that both parents personally remediated a condition. For example, if a child were removed due to a lack of housing, and one parent signed a lease obviating the reason for continued placement outside the home, there is not "a reasonable probability that the conditions resulting in removal or reasons for placement outside the home will not be remedied." I.C. § 31-35-2-4. Here, the DCS did not prove by clear and convincing evidence a reasonable probability of lack of remediation; rather, it proved Father made no contribution.

[24] Concerning the disjunctive element of parental threat, the trial court concluded that continuation of the father-child relationship posed a specific threat: a barrier to permanence. However, given the bifurcated order preserving Mother's parental rights, presumably Children's "permanence" is with Mother as opposed to the DCS plan of adoption by foster parents. In this scenario, continuation of Father's legal relationship with Children does not pose a barrier. This is not to say that the existence of a legal relationship necessarily

entitles Father to unsupervised time with Children, given Father's historical disregard of the CHINS order, the no-contact order, and the protective order.

[25] Finally, Father contends that the DCS did not present clear and convincing evidence that termination of his parental rights is in Child's best interests. In determining what is in a child's best interests, the court must look to the totality of the evidence. *In re A.D.S.*, 987 N.E.2d 1150, 1158 (Ind. Ct. App. 2013), *trans. denied*. We have previously held that recommendations by the case manager and child advocate to terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that termination is in the child's best interests. *Id.* at 1158-59.

[26] Here, all evidence points to the conclusion that the condition of Children's exposure to domestic violence was remedied. Mother had obtained employment and housing. The case manager and GAL recommended the termination of both parent's rights; the recommendation was followed as to one parent and not the other. The Indiana Code does not prohibit termination of only one parent's rights. *In re A.W.*, 62 N.E.3d 1267, 1273 (Ind. Ct. App. 2016). However, because Father is employed and there is no step-parent, the practical effect of terminating Father's rights is that it increases Mother's financial burden and deprives Children of a source of financial support; this is not in Children's best interests.

# Conclusion

Father demonstrated that the termination hearing was not timely conducted and that the order terminating Father's parental rights to Children is clearly erroneous.

Reversed.

Riley, J., and Pyle, J., concur.